UNITED STATES, Appellant

v.

Daniel R. PERRON, Boatswain's Mate Second Class
U.S. Coast Guard, Appellee

No. 02-0168

Crim. App. No. 1115

_____

United States Court of Appeals for the Armed Forces

Argued  October 16, 2002

Decided February 12, 2003

BAKER, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and ERDMANN, JJ., joined.  CRAWFORD, C.J.,
filed a dissenting opinion.

<u>Counsel</u>

For Appellee:  <u>Lieutenant Daniel J. Goettle</u> (argued); and
<u>Commander Peter J. Ganser</u>.


For Appellant: <u>Commander Jeffrey C. Good</u> (argued).

Military Judge:  B. Schroder


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

United States v. Perron, No. 02-0168/CG

Judge BAKER delivered the opinion of the Court:

Appellant was tried by a special court-martial composed of a military judge alone.  In accordance with his pleas, Appellant was convicted of one specification of wrongful possession of a controlled substance and two specifications of wrongful use of a controlled substance, in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2002).  He was sentenced to a bad-conduct discharge, confinement for 90 days, and a reduction to pay grade E-3.  Consistent with a pretrial agreement, the convening authority approved the adjudged sentence but suspended all confinement in excess of 60 days for a period of six months.

The Coast Guard Court of Criminal Appeals set aside the convening authority's action due to a mutual misunderstanding regarding a material term in the pretrial agreement.  United States v. Perron, 53 M.J. 774, 777 (C.G. Ct. Crim. App. 2000) (Perron I).  On remand, the convening authority approved only the bad-conduct discharge and the reduction to E-3.

On November 1, 2001, the Court of Criminal Appeals again reviewed the convening authority's action.  United States v. Perron, 57 M.J. 597 (C.G. Ct. Crim. App. 2001) (Perron II).  It affirmed the findings of guilty and the

bad-conduct discharge, but set aside the reduction to pay

grade E-3, restoring all rights, privileges, and property

related to portions of the sentence that had been set

aside. Id. at 599.

This Court granted review on the following issues:

I.   WHERE THERE HAS BEEN A FAILURE OF A MATERIAL TERM IN A
     PRETRIAL AGREEMENT, MAY AN APPELLATE COURT FASHION AN
     ALTERNATIVE REMEDY OF ITS OWN CHOOSING, CONTRARY TO
     APPELLANT'S WISHES, OR MUST IT AFFORD AN APPELLANT THE
     OPPORTUNITY TO WITHDRAW FROM THE AGREEMENT?

II.  WHETHER THE LOWER COURT ERRED BY FAILING TO FIND THAT
     APPELLANT'S PLEAS OF GUILTY PURSUANT TO A PRETRIAL
     AGREEMENT WERE VOLUNTARY BEYOND A REASONABLE DOUBT,
     WHERE THE COURT CONCLUDED THERE HAD BEEN A FAILURE OF
     A MATERIAL TERM OF THE AGREEMENT.

We reverse the Court of Criminal Appeals' decision.

Because we resolve this case on Issue I, we do not reach

the second granted issue.

Background

On January 15, 1999, Appellant and the Government

entered into a pretrial agreement. One provision of that

agreement required the convening authority to waive all

automatic forfeitures and pay those to Appellant's family

during his confinement.[1] After Appellant began serving his

confinement, trial defense counsel informed Appellant that

_____

[1] Paragraph three of the Maximum Sentence Appendix to [the] Memorandum
of Pretrial Agreement provided: "Forfeiture or Fine: Any adjudged fine
or forfeiture will be disapproved. In accordance with Art. 58(b),
UCMJ, the Convening Authority agrees to waive any or all forfeitures
and pay the dependents of the accused."

he had entered a no-pay status upon his confinement due to the expiration of his enlistment term prior to trial.[2]  As a result, his family did not receive the agreed-upon payments during his confinement.

On March 8, 1999, trial defense counsel sent a clemency request to the convening authority, alerting him to the problem.  In the request, Appellant's counsel asked the convening authority to correct the mistake:

> Please consider BM2 Perron's family in this matter.  The family cannot survive financially without the aid of BM2 Perron.  Granting relief from the pay provisions or immediate release from jail in order to gain immediate employment are the only options that allow for the financial relief his family desperately needs.

On March 11, 1999, the convening authority responded to trial defense counsel's plea for relief as follows:

1. I reviewed your clemency request of 8 Mar 99.  Upon review, and in accord with Article 58b, UCMJ, I have acted upon your concerns. I immediately sent a letter requesting a waiver of all forfeitures (including automatic forfeitures) in the subject case to USCG Human Resource Service and Information Center (HRSIC) (a copy of which was provided to you, see Encl. (1)).

2. Enclosure (2) provides the response from HRSIC to the request.  Unfortunately, due to SN Perron's status (involuntary extension due to pending court-martial), he was in a no-pay status when sentencing occurred and the entire time he was in jail.  Thus, there were no forfeitures available to forfeit.

---

[2] See Department of Defense,7A Financial Management Regulation Chapter 3, para. 030207C (1996).

> As such, it is impossible to achieve the desired result provided for in Article 58b. I have made every attempt available and acted as provided for in the Pre-Trial Agreement. I have waived all forfeitures. As a result of an administrative distinction, however, the desired result of having SN Perron's family receive these waived automatic forfeitures is impossible.
>
> 3. Further, I have reviewed your clemency request as it relates to the immediate release of SN Perron. I deny your sought relief. I will, however, ensure this request is reviewed again by the SJA and myself once the record of trial is forwarded for our respective reviews and my final action.

Because the convening authority's action did not correct the misunderstanding regarding the forfeiture provision, Appellant sought relief from the Coast Guard Court of Criminal Appeals. The Court of Criminal Appeals found that none of the trial participants, including the military judge, realized that Appellant would enter a no-pay status upon confinement because his enlistment expired prior to trial.[3] Perron I, 53 M.J. at 777. It also determined that the forfeiture provision of the pretrial agreement was a material term of the agreement, a conclusion the Government has not challenged in this Court. Id. The lower court therefore remanded the case to the convening authority to either set aside the findings of

5

guilty and the sentence or determine whether some other form of alternative relief was appropriate.  Id.

On remand, the convening authority modified the sentence, approving only the bad-conduct discharge and the reduction to E-3.  Because the revised sentence did not include confinement, the pay center determined that Appellant was entitled to payment for the time he spent in confinement, which by that time had been completed.  The pay center therefore paid Appellant $3,184.90, the amount his family would have received had the forfeiture provision been effective.

Unsatisfied with the convening authority's action, Appellant again appealed to the Court of Criminal Appeals for relief.  In his appeal, Appellant continued to argue that his plea was involuntary.  Perron II, 57 M.J. at 598. The basis of his claim was that the convening authority's action in disapproving confinement and allowing for the belated payment of the funds his family should have received under the pretrial agreement was insufficient to cure the failed material provision in the pretrial agreement.  Id.  In other words, Appellant argued that he would not have agreed to the pretrial agreement had he been

---

[3] Indeed, the military judge erroneously assured trial defense counsel during the providence inquiry that the provision waiving automatic forfeitures would "kick in, as well, for the period of confinement."

offered the relief provided by the convening authority, because payment of the forfeiture amount after confinement did not compensate his family for the value the payments would have had if they had been paid during his incarceration. He claimed that the only proper relief was for the Court of Criminal Appeals to either allow him to withdraw his plea or accept his proposed relief-- disapproval of his bad-conduct discharge. Id. at 599.

Despite Appellant's continued insistence that the belated payment was not appropriate alternative relief, the lower court cited United States v. Mitchell, 50 M.J. 79 (C.A.A.F. 1999), and held that it could provide alternative relief to Appellant, even if doing so was contrary to his wishes. Id. The court went on to hold that the belated payment was "close enough to the action promised in the pretrial agreement to constitute satisfaction of that agreement, particularly if further reduction of the sentence will allow for payment of additional money as a substitute for interest." Id. The Court of Criminal Appeals therefore set aside the reduction from E-5 to E-3, commenting, "This difference in pay should exceed any reasonable interest calculation." Id. Appellant then petitioned this Court for relief.

In his appeal before this Court, he continues to argue that his pleas were involuntary. Citing Santobello v. New York, 404 U.S. 257 (1971), he asserts that where an accused pleads guilty in reliance on Government promises made in a pretrial agreement, the plea can only be found to be voluntary if the Government fulfills those promises. Where the Government fails to fulfill those promises, Appellant argues, the proper remedy is either specific performance, withdrawal of the plea, or another remedy agreeable to the accused. Although recognizing that this Court has approved of "appropriate alternative relief," Appellant contends that imposing such relief on him against his will violates his Fifth Amendment right to due process.

I

The issue in this case, therefore, is whether imposing alternative relief on an appellant against his will, to correct a failure of a material provision of a pretrial agreement, due to a mutual misunderstanding, violates the Due Process Clause of the Fifth Amendment. Courts have long recognized that the decision to plead guilty is a serious and consequential decision. The Supreme Court, for instance, has said that "a plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give

judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242 (1969). A guilty plea is also a sobering decision because it involves the waiver of a number of individual constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the Sixth Amendment right to confront one's accusers. McCarthy v. United States, 394 U.S. 459, 466 (1969). These concerns are no less important in our military system of justice, where pleading guilty constitutes a conviction and a waiver of the accused's trial rights. See United States v. Forester, 48 M.J. 1, 2-3 (C.A.A.F. 1998); United States v. Care, 18 C.M.A. 535, 538-39 (1969).

Because of the consequences resulting from guilty pleas, the Supreme Court has recognized the constitutional necessity of ensuring that such pleas are entered into voluntarily and knowingly, "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Where a plea is not knowing and voluntary, "it has been obtained in violation of due process and is therefore void." McCarthy, 394 U.S. at 466.

To ensure that the requirements of due process are complied with, the federal civilian system and the military

9

system have created a number of protective measures to ensure that pleas are entered into voluntarily and knowingly. In the civilian system, Federal Rule of Criminal Procedure 11 was created to help judges make "the constitutionally required determination that a defendant's guilty plea is truly voluntary." McCarthy, 394 U.S. at 465.

The military justice system imposes even stricter standards on military judges with regards to guilty pleas than those imposed on federal civilian judges. See United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996) (noting that Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2002), requires military judges, unlike civilian judges, to resolve inconsistencies and defenses during the providence inquiry or "the guilty plea[] must be rejected"). In United States v. Care, this Court imposed an affirmative duty on military judges, during providence inquiries, to conduct a detailed inquiry into the offenses charged, the accused's understanding of the elements of each offense, the accused's conduct, and the accused's willingness to plead guilty. 18 C.M.A. at 541-42. Care's general mandate to insure that pleas are voluntary is now contained in Rule for Courts-Martial 910(d) [hereinafter R.C.M.] which provides:

> The military judge shall not accept a plea of
> guilty without first, by addressing the accused
> personally, determining that the plea is
> voluntary and not the result of force or threats
> or of promises apart from a plea agreement under
> R.C.M. 705.  The military judge shall also
> inquire whether the accused's willingness to
> plead guilty results from prior discussions
> between the convening authority, a representative
> of the convening authority, or trial counsel, and
> the accused or defense counsel.

See Forester, 48 M.J. at 3 (citing R.C.M. 910(d) for

the proposition that guilty pleas must be knowing and

voluntary).

While these protections address problems that could

arise during a providence inquiry, and indicate a

recognition of the overall importance of voluntary pleas,

they do not directly deal with circumstances affecting

pleas after the plea has been accepted;[4] however, other

protections do.

It is fundamental to a knowing and intelligent plea

that where an accused pleads guilty in reliance on promises

made by the Government in a pretrial agreement, the

---

[4] The notion that later circumstances may affect the voluntariness of a plea once accepted is neither novel nor unique to military law.  See, e.g., United States v. Smith, 56 M.J. 271, 279 (C.A.A.F. 2002) (holding, under United States v. Hardcastle, 53 M.J. 229 (C.A.A.F. 2000) and United States v. Williams, 53 M.J. 293 (C.A.A.F. 2000), that the Government's failure to fulfill a material term of an accepted pretrial agreement made the appellant's pleas improvident, warranting relief); Hardcastle, 53 M.J. at 302; Williams, 53 M.J. at 295 (both holding that the Government's failure to fulfill a material promise made in an accepted pretrial agreement rendered the accused's pleas improvident)(citing Santabello v. New York, 404 U.S. 257 (1971); United States v. Bedania, 12 M.J. 373 (C.M.A. 1982)).

voluntariness of that plea depends on the fulfillment of those promises by the Government.  See Santobello, 404 U.S. at 262  ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled."); Correale v. United States, 479 F.2d 944, 947 (1st Cir. 1973) ("Though a legitimate prosecution promise does not render a guilty plea legally involuntary, its fulfillment is a necessary predicate to a conclusion of voluntariness when a plea 'rests in any significant degree' on it.") (quoting Santobello, 404 U.S. at 262) (internal citations omitted).

Based on this principle, our Court has held in a line of recent cases that where there is a mutual misunderstanding regarding a material term of a pretrial agreement, resulting in an accused not receiving the benefit of his bargain, the accused's pleas are improvident.  See United States v. Hardcastle, 53 M.J. 299, 302 (C.A.A.F. 2000); United States v. Williams, 53 M.J. 293, 296 (C.A.A.F. 2000).[5]  In such instances, we have held

---

[5] While Hardcastle and Williams were adjudicated on the basis of concessions, we accepted those concessions because they accurately reflected the impact of a mutual misunderstanding of a material term on the providency of a pretrial agreement.  The principles relied upon in Hardcastle and Williams are equally applicable to the circumstances of this case.

12

that remedial action, in the form of specific performance, withdrawal of the plea, or alternative relief, is required. See United States v. Smith, 56 M.J. 271, 279 (2002); Mitchell, 50 M.J. at 82.

In this case, the Court of Criminal Appeals determined that the forfeiture provision was a material term of the pretrial agreement, relied upon by Appellant.  Under our decisions in Hardcastle and Williams, when it became apparent that the material provision in the pretrial agreement was ineffective, Appellant's pleas became involuntary and improvident, warranting relief.  The critical question in this case is whether a court of criminal appeals or a convening authority can determine that alternative relief renders a plea voluntary when an appellant argues that such relief does not give him the benefit of his bargain.

The Government asserts that appellate courts not only have the power to fashion remedies other than specific performance or withdrawal, it maintains that such relief can be imposed upon an unwilling appellant so long as that relief provides the appellant with the benefit of his bargain.  It cites as authority for this position, this Court's decisions in Mitchell, 50 M.J. at 83, and Smith, 56 M.J. at 273.

In Mitchell, we were asked to address whether a misunderstanding regarding a material term in a pretrial agreement rendered an appellant's guilty pleas improvident. 50 M.J. at 80. While that question was on appeal before this Court, the Secretary of the Air Force approved appellant Mitchell's request for retirement. Id. at 81. The Government argued that the Secretary's action fairly compensated Mitchell for any claim resulting from the misunderstanding regarding the term in the pretrial agreement. Id. at 82. Mitchell disagreed. He asserted that he would have received the benefits regardless of his conviction and that they were unconnected to the failed term in his pretrial agreement. Id.

Because we saw the Secretary's action as having the potential to moot the granted issue in Mitchell, we remanded the case to the Air Force Court of Criminal Appeals to determine "whether, as a matter of law or regular practice, a similarly situated airman would have been placed on retired-pay status, as a matter of course, without regard to any litigation concerning that airman's pretrial agreement." Id. If so, we held that the "retired pay [could not] be viewed as a means of enforcing the pretrial agreement against [Mitchell]." Id. On the other hand, if not, then we held open the possibility that the

14

retirement pay "could be viewed as an adequate means of providing appellant with the benefit of his bargain." Id. at 82-83. We went on to state that if the retirement pay was not adequate relief, the Court of Criminal Appeals was in a position to determine whether additional relief was necessary to give Mitchell the benefit of his bargain. Id. at 83.

In Smith, we again had occasion to decide whether an accused had been deprived of the benefit of his bargain because of a misunderstanding regarding the effect of a term in his pretrial agreement. 56 M.J. at 273. Similar to Appellant in this case, Smith pleaded guilty in exchange for a Government's agreement to waive automatic forfeitures in favor of his family. Id. Because Smith's enlistment expired prior to his trial, the waiver provision became ineffective. Id. at 276. Smith then argued that the term was material and that failure of the term rendered his pleas improvident. Id. at 277.

We agreed with Smith that the forfeiture provision was a material term and held that because the Government had not fulfilled its part of the agreement, Smith had not received the benefit of his bargain. Id. at 279. We therefore remanded the case to the Navy-Marine Corps Court of Criminal Appeals to determine the appropriate relief.

Id. In so doing, we stated that where "the bargained-for benefit is outside the authority of the Government to provide," the Courts of Criminal Appeals are well situated to "determine whether some 'appropriate alternative relief' is available 'as an adequate means of providing appellant with the benefit of his bargain.'" Id. at 279-80 (quoting Mitchell, 50 M.J. at 83).

Neither Smith nor Mitchell however addressed the proposition that appellate courts can impose alternative relief on an unwilling appellant to rectify a mutual misunderstanding of a material term in a pretrial agreement. Those cases simply establish that there are circumstances when alternative relief may be appropriate. We now conclude that an appellate court cannot impose such relief in the absence of the appellant's consent.

II

The touchstone case on the appropriate remedies for a failed material term in a plea agreement is Santobello v. New York, 404 U.S. 257 (1971). In Santobello, the Supreme Court suggested that where a material term of a pretrial agreement fails, the proper remedy is either specific performance or withdrawal of the plea. Specifically the Court stated:

16

United States v. Perron, No. 02-0168/CG

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by the petitioner, i.e., the opportunity to withdraw his plea of guilty.

Id. at 263.

Appellant argues that this language in Santobello limits the relief available to a court to remedy a mutual misunderstanding in a plea agreement to specific performance or withdrawal. However, the Court in Santobello did not expressly preclude the possibility that other remedies might be appropriate in a particular case. Nor did the Court address the military system of hybrid sentencing, which incorporates penalties such as forfeiture and discharge, as well as confinement. See Lane v. Williams, 455 U.S. 624, 631 (1982) (refusing to address whether remedies other than specific performance or withdrawal would be authorized and appropriate in some cases).

Several of the federal circuit courts have interpreted Santobello as permitting imposition of a third type of remedy where specific performance or withdrawal would be meaningless or infeasible. See, e.g., Correale, 479 F.2d

17

at 950 (applying a remedy other than specific performance or withdrawal where such remedies would have been "hollow"); United States v. Jureidini, 846 F.2d 964, 965-66 (4th Cir. 1988) (citing Correale for the idea that courts have the power to order equitable relief, where appropriate, to insure that a plea bargain is not frustrated); United States v. O'Brien, 853 F.2d 522, 526 (7th Cir. 1988) (authorizing imposition of a specific sentence where neither specific performance nor withdrawal "would provide an appropriate remedy").

However, the only circuit that has actually applied this third type of remedy has said that, under Santobello, "a plea agreement is ordinarily remedied either by specific performance of the agreement or by allowing the defendant to vacate his guilty plea;" and alternative remedies are reserved for "extreme situations" where other remedies "would be completely meaningless" or infeasible. Kingsley v. United States, 968 F.2d 109, 113-14 (1st Cir. 1992). See United States v. Garcia, 698 F.2d 31, 37 (1st Cir. 1983) (ordering the imposition of a specific sentence only because withdrawal of the plea and specific performance

served no useful purpose).[6]  The Government, in its argument, places no such limitations on applying alternative relief in the military system.

The Government goes a step further than the federal circuits that have liberally construed Santobello.  It maintains that "[a] court of criminal appeals can remedy a failure of a material term by ordering relief that the appellant does not desire, so long as that remedy gives the appellant the benefit of the bargain," even where withdrawal or specific performance are not meaningless or infeasible.  There are obvious benefits to this position.  For example, because the military sentencing system has a number of sentencing options, a military court or convening authority is more likely to be able to find a desirable remedy as a substitute for an ineffective term in a

---

[6] We do not need to address whether we adopt the view taken by these circuits.  It suffices to say that this case is not one in which withdrawal would serve no useful purpose.  Certainly, for the Appellant, withdrawal may result in a more favorable outcome with respect to some aspects of his sentence if, for example, the Government elected not to retry him, if he reached another agreement with the Government, or if he was ultimately acquitted.  However, it is worth noting that, unlike the civilian system, where the only sentencing option is confinement, in the military system of sentencing, specific performance and withdrawal will almost never be meaningless or infeasible because convicted service members generally receive varied sentencing punishments.  For example, withdrawal in the military system may not be meaningful relief as to confinement, due for example to an accused's already having served a confinement term.  However, withdrawal of a plea could allow an accused to challenge any other punishments that have a continued impact on his or her livelihood, such as forfeitures, a rank reduction, or a punitive separation.  Thus, it will be the unusual case where an accused will not have some meaningful reason to seek withdrawal of his or her plea.

19

pretrial agreement than a civilian court.  Furthermore, concerns over judicial economy and finality favor applying remedies other than withdrawal.  This is particularly true in a military system of worldwide deployment where there are no permanent tribunals to supervise the implementation of pretrial agreements.  Applying alternative relief could therefore avoid the difficulty of reconvening a court-martial for retrial.  For these reasons, we recognized in Mitchell and Smith that alternative relief may be appropriate in certain circumstances.

However, weighted against the benefits of imposing alternative remedies on an unwilling appellant are concerns about the voluntariness of pleas and the constitutional rights afforded an accused.  Imposing remedies on an unwilling appellant after the conclusion of a providence inquiry intrudes upon an accused's decision to plead guilty.  When an accused pleads guilty, he waives a number of constitutional rights.  These rights are individual rights and can, in most circumstances, only be exercised or waived by the accused.  See McCarthy, 394 U.S. at 466.  An accused can use them wisely or unwisely, but they are the accused's to exercise or waive.  When an appellate court substitutes its own remedies in place of negotiated plea terms, it steps into the accused's shoes and is in effect

renegotiating the accused's plea agreement and waiving his rights.  This, an appellate court cannot do without the accused's consent.

Compelling an accused to accept unwanted remedies as relief for a failed plea agreement may also result in erroneous conclusions of voluntariness.  Determining whether a plea is voluntary is by no means an exact science.  But an accurate determination is more likely to result where the accused himself assures the court that his plea is voluntary.  Where the accused does not agree that a particular form of relief rectifies a failed material term and provides him with the benefit of the bargain--and therefore calls into question the voluntariness of the guilty plea--we are skeptical that an appellate court could, nevertheless, determine with a necessary degree of certainty that the accused would have pleaded guilty had he been offered the relief he is ultimately being compelled to accept.  Where the failed term in the agreement involves pure economic concerns, finding relief of equal value is possible.  But where the promised benefit relates to non-economic concerns--e.g. the immediate care of a family--or where the promise has indeterminable value, determining the "benefit" of the bargain becomes a guessing game, and may result in undervaluing the promised benefit to the accused.

The present case provides an example of this situation. Appellant pleaded guilty in exchange for the Government agreeing to provide his family with income while he was incarcerated. That agreement was not fulfilled in this case. Now the government maintains that paying Appellant $3,184.90 plus interest will fully compensate him. However, that assertion ignores the timing of the payment, which Appellant argues was as material as the amount of money promised in the agreement. Significantly, the Court of Criminal Appeals found that the third paragraph of the agreement in this case appeared to address this objective. Perron I, 53 M.J. at 774. At this stage, Appellant continues to maintain that payment in full does not compensate his family for the present value of receiving the money during his incarceration.

Authorizing courts to impose alternative relief may also effectively do away with withdrawal as a form of relief. Courts, as well as convening authorities, have an obvious interest in judicial efficiency and finality. Where a conviction is based on a guilty plea, courts are often loath to set aside that plea because retrial is inefficient and burdensome. Where courts are able to simply craft some form of "suitable" relief to avoid retrial, they might be inclined to impose such relief even

22

where withdrawal is the more appropriate remedy. But the issue in this case is not only about relief. This case underscores the point that the remedy must go beyond simply making one whole; rather, remedies for the failure of a material term in a pretrial agreement must ultimately support a conclusion that the plea was voluntary. Imposing alternative relief on an unwilling appellant does not do this.

We therefore hold that imposing alternative relief on an unwilling appellant to rectify a mutual misunderstanding of a material term in a pretrial agreement violates the appellant's Fifth Amendment right to due process.[7] An appellate court may determine that alternatives to specific performance or withdrawal of a plea could provide an appellant with the benefit of his or her bargain--and may remand the case to the convening authority to determine

---

[7] This, of course, does not preclude a convening authority and an accused from availing themselves post-trial of the opportunity to renegotiate a new plea agreement to avoid a contest to the providence of the plea. As we said in Smith,

> where there has been a mutual misunderstanding as to a material term, the convening authority and an accused may enter into a written post-trial agreement under which the accused, with the assistance of counsel, makes a knowing, voluntary, and intelligent waiver of his right to contest the providence of his pleas in exchange for an alternative form of relief.

56 M.J. at 279.

whether doing so is advisable[8]--but it cannot impose such a remedy on an appellant in the absence of the appellant's acceptance of that remedy.

That being said, a pretrial agreement is an agreement between the convening authority and the accused. An appellant cannot dictate the terms of a pretrial agreement to the convening authority. This is true on review as well as at the outset. In other words, if the parties cannot agree on alternative relief, and specific performance is not available, the result is to nullify the original pretrial agreement, returning the parties to the status quo ante. Behind all the back and forth of alternative relief, this case is like any other where the plea is challenged as improvident.

## III

The Court of Criminal Appeals therefore erred when it concluded that payment-in-full rendered Appellant's plea voluntary. Appellant should have been permitted to withdraw his plea.

---

[8] This does not mean that a convening authority can impose alternative relief on an appellant. The same principles precluding the courts of criminal appeals from imposing alternative relief on an appellant prevent a convening authority from taking such action.

The decision of the United States Coast Guard Court of Appeals is reversed.  The findings and sentence are set aside.  The record of trial is returned to the General Counsel of the Department of Transportation for action consistent with this opinion.  A rehearing may be ordered.

CRAWFORD, Chief Judge (dissenting):

The majority allows Appellant to withdraw from his pretrial agreement even though he received everything he bargained for. In doing so, the majority focuses on what Appellant says were his personal reasons for entering into the agreement. The majority does not, as it should, limit itself to identifying and enforcing the terms of the agreement Appellant and the convening authority actually reached. The end result contravenes strong public policy and well established federal case law. For these reasons, I respectfully dissent.

In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court recognized that plea agreements are "essential" to criminal justice, are "highly desirable," and must be "encouraged." Id. at 260-61. This is because such agreements

> lead[] to prompt and largely final disposition of
> most criminal cases; . . . avoid[] much of the
> corrosive impact of enforced idleness during pretrial
> confinement for those who are denied release pending
> trial; . . . protect[] the public from those accused
> persons who are prone to continue criminal conduct
> even while on pretrial release; and, by shortening
> the time between charge and disposition, . . .
> enhance[] whatever may be the rehabilitative
> prospects of the guilty when they are ultimately
> imprisoned.

Id. at 261. As we also have stated:

> There are numerous benefits to pleading guilty
> [in accordance with a plea agreement]. A plea of
> guilty ensures the prompt application of correctional
> measures; avoids delays; amounts to an acknowledgement
> of guilt and acceptance of responsibility; and avoids

> the risks of a contested trial.  Guilty pleas also
> help preserve limited resources and relieve the
> victim[s] of the trauma of testifying.

United States v. Forester, 48 M.J. 1, 3 (C.A.A.F. 1998)(footnote omitted).

Thus, the benefits of plea agreements inure not only to defendants, but also to society, and the interests of both must be taken into account when deciding how best to remedy the Government's breach of a plea agreement.  As a result, even though a defendant waives fundamental constitutional rights when he or she pleads guilty,[1] the Supreme Court has made clear that the Government's breach of a plea agreement does not entitle a defendant to withdraw from the agreement if the breach can be remedied by specific performance.

In Santobello, as part of a plea bargain, the prosecutor agreed to make no sentence recommendation.  That promise was breached, however, when another prosecutor in the case, unaware of his predecessor's promise, recommended the maximum sentence. Defense counsel immediately objected, but to no avail, and the trial judge imposed the maximum sentence.  On these facts, the Supreme Court held Santobello was entitled to relief, but left to the discretion of the state court

---

[1] By pleading guilty, a defendant waives the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers.  See Boykin v. Alabama, 395 U.S. 238, 243 (1969); McCarthy v. United States, 394 U.S. 459, 466 (1969).

> whether the circumstances of this case require only that there be specific performance of the agreement on the plea, . . . or whether, in the view of the state court, the circumstances require granting the relief sought by [Santobello], i.e., the opportunity to withdraw his plea of guilty.

404 U.S. at 263 (footnote omitted).

The import of this language is clear.  Even if a defendant requests to withdraw from a plea agreement that has been breached, specific performance of the agreement, when possible, should be the remedy.  See United States v. Gilchrist, 130 F.3d 1131, 1134 (3d Cir. 1997)("[T]he district court, not the defendant, is to decide in the first instance whether to grant specific performance of the plea agreement or withdrawal of the guilty plea."); Peavy v. United States, 31 F.3d 1341, 1346 (6th Cir. 1994)("The choice between these remedies is not up to the defendant but, rather, rests in the sound discretion of the district court."); Kingsley v. United States, 968 F.2d 109, 113 (1st Cir. 1992)("The choice between these two remedies is not up to the defendant; rather, it rests with the court. . . . Specific performance, the less extreme remedy, is preferred.") (emphasis added); United States v. Tobon-Hernandez, 845 F.2d 277, 280-81 (11th Cir. 1988)("Santobello did not hold that a defendant's choice of remedy for a breach of a plea agreement was binding on the court.  Rather, the remedy for a breach of a plea agreement is within the sound discretion of the court.").

3

Therefore, the question becomes: Is specific performance of the breached promise in Appellant's case possible? And the answer to that is yes.

At the outset, it is important to note what the breached promise was -- and what it was not. It was not the type of breached promise found in almost every post-Santobello federal case dealing with this subject, i.e. - a promise by a prosecutor to make or refrain from making a sentence recommendation to the trial judge, to dismiss certain charges, to reduce certain charges, or not to prosecute certain offenses. See Jay M. Zitter, Choice of Remedies Where Federal Prosecutor has Breached Plea Bargain - Post- Santobello v. New York, 120 A.L.R. Fed. 501 (1994 & 2002 Supp.). Instead, it was a promise unique to the military justice system, i.e. - a promise to pay a sum of money.

In the military, a court-martial sentence that includes more than six months' confinement or a punitive discharge results in the automatic forfeiture of pay and allowances due a servicemember during confinement. See Art. 58b(a)(2002), Uniform Code of Military Justice, 10 U.S.C. § 858b(a). However, the convening authority (the person who enters into a plea agreement with an accused)[2] may waive these forfeitures for six months and pay them to the dependents of an accused. See Art. 58b(b). Significantly, there is no requirement that the money

be used for any particular purpose. Nor is there any accounting or monitoring system in place to determine how the money is used. Consequently, while the money certainly can be used for support and necessities, it also can be used for many other things.

Given these possibilities, and absent any evidence in the record compelling a different result, this Court should not read into the agreement between Appellant and the convening authority anything more than what its express, unambiguous terms provide for -- the payment of a sum of money. Plea agreements are contracts, and the terms of those contracts are ascertained using general principles of contract law. United States v. Acevedo, 50 M.J. 169, 172 (C.A.A.F. 1999). Two of those principles are as follows:

> When the terms of a contract are unambiguous, the intent of the parties is discerned from the four corners of the contract. See United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991). When the contract is ambiguous on its face because a provision is open to more than one interpretation, extrinsic evidence is admissible to determine the meaning of the ambiguous term. See United States v. Ingram, 979 F.2d l179, 1184 (7th Cir. 1992), cert. denied, 507 U.S. 997 . . . (1993).

Id.; see also United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000).

---

² See Rule for Courts-Martial 705(a).

5

In Appellant's case, the terms of the agreement ("waive any or all forfeitures and pay the dependents of the accused") are unambiguous. Moreover, nothing else in the agreement, or the discussion of the agreement on the record, suggests any particular reason why the parties agreed on the payments, or any agreement between them as to what the money could, or could not, be used for. Cf. Kingsley, 968 F.2d at 111-12, 114-15 (discussion on the record between trial judge, prosecutor, and defense counsel supplied additional meaning to written terms of pretrial agreement). As a result, nothing supports a limiting interpretation of this agreement that one of the mutually agreed upon terms was "time was of the essence" in the payment of the money.[3]

This case is not about what Congress intended when it enacted Article 58b(b); and it is not about what personal reasons may have motivated Appellant to enter into his pretrial agreement. This case is about what both appellant and the convening authority mutually intended and actually agreed to, and about enforcing that agreement as a matter of good social policy. That said, there is nothing in the unambiguous terms of the written agreement, or anywhere else, that suggests the convening authority was made aware of, understood, and agreed

---

[3] See generally John D. Calamari & Joseph M. Perillo, The Law of Contracts 414-16 (4th ed. 1998)(only when time is of the essence does delay constitute a material breach).

that Appellant had a particular, immediate use to which he wanted to put the money, and that the agreement would fail if the money was not immediately paid.  See United States v. Burns, 160 F.3d 82, 83 (1st Cir. 1998)("[S]ignificant plea-agreement terms should be stated explicitly and unambiguously so as to preclude their subsequent circumvention by either party.").[4]

Thus, the mutually agreed upon promise in this case was nothing more than payment of a sum of money, and specific performance of that unique promise was properly accomplished through alternative means when (1) the convening authority disapproved the sentence to confinement, resulting in a payment to Appellant of $3,184.90, and (2) the Court of Criminal Appeals set aside the sentence of reduction to E-3, which, if affirmed by this Court, "will allow for payment of additional money as a substitute for interest."  57 M.J. at 599 (relying on United States v. Mitchell, 50 M.J. 79, 82-83 (C.A.A.F. 1999), and United States v. Olson, 25 M.J. 293, 298-99 (C.M.A. 1987)).

The lower court's reliance on Mitchell was well placed. Mitchell, and this Court's most recent decision in United States v. Smith, 56 M.J. 271 (C.A.A.F. 2002), are controlling.[5]  In each, as in this case, the convening authority

---

[4] I note that the pretrial agreement did state it would terminate in a variety of other situations, demonstrating that when Appellant and the convening authority agreed to such a condition, they included it in their agreement.
[5] This Court's decisions in United States v. Williams, 53 M.J. 293 (C.A.A.F. 2000), and United States v. Hardcastle, 53 M.J. 299 (C.A.A.F. 2000), are not

and the appellant entered into a pretrial agreement where the convening authority agreed to waive automatic forfeitures and pay the money to the appellant's dependents.  In each, as in this case, the convening authority could not fulfill that promise because the appellant was not entitled to pay during the period of his confinement.  And in each, this Court allowed the lower court to "determine whether some 'appropriate alternative relief' [was] available 'as an adequate means of providing [the] appellant with the benefit of his bargain.'"  Id. at 279 (quoting Mitchell, 50 M.J. at 83).  Failing that, of course, the appellant could withdraw his pleas of guilty.

There is no reason why the result in Appellant's case should be any different.  The one fact distinguishing this case from Mitchell and Smith is that Appellant states the only remedy that will satisfy him is withdrawal of his pleas, whereas the appellants in Mitchell and Smith were silent in that regard. But that is a distinction without a difference, because the law is abundantly clear -- the choice of remedy rests with the courts, and the fact an otherwise appropriate remedy is not an appellant's remedy of choice does not compel a different result, because it does not offend due process in light of society's compelling interest in supporting and enforcing plea agreements.

_____

controlling.  In each, the convening authority, through government appellate counsel, agreed to the appellant's withdrawal of his pleas as a remedy for the convening authority's breach.  No such concession exists here.

See Santobello, Gilchrist, Peavy, Kingsley, and Tobon-Hernandez, all supra.

This case should be affirmed.