UNITED STATES

v.

Senior Airman Timothy E. SHEFFIELD,
United States Air Force.

ACM S30384.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 18 April 2003.

22 July 2004.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Jennifer K. Martwick.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Captain Stacey J. Vetter.

Before STONE, MOODY, and JOHNSON, Appellate Military Judges.

OPINION OF THE COURT

JOHNSON, Judge:

In accordance with his pleas, the appellant was convicted of one specification of failure to go, one specification of missing movement through design, one specification of disobeying a lawful order, and one specification of dereliction of duty on divers occasions, in violation of Articles 86, 87, 90, and 92, UCMJ, 10 U.S.C. §§ 886, 887, 890, 892. A special court-martial composed of a military judge sitting alone, sentenced the appellant to a bad-conduct discharge, confinement for 4 months, and reduction to E–1. The convening authority approved the sentence as adjudged. The appellant raises two errors for our consideration: (1) Whether this Court should take action pursuant to *United States v. Perron*, 58 M.J. 78 (C.A.A.F.2003) to remedy the failure of a material term in the pretrial agreement (PTA); and (2) Whether

the staff judge advocate's recommendation (SJAR) failed to properly advise the convening authority of his obligation to comply with the material terms of the PTA.[1] We find error and set aside the findings and sentence.

*Background*

On 17 April 2003, the convening authority and the appellant entered into a pretrial agreement. The appellant agreed to waive his right to a trial by a court-martial composed of members and instead to request trial by military judge alone; to plead guilty to the Specification of Charge I and Charge I, to Specification 2 of Charge II and Charge II, to the Specification of Charge III and Charge III, and to the Specification of Charge IV and Charge IV; and to waive his rights to a trial of the facts, to be confronted by witnesses against him, and to avoid self-incrimination. In exchange, the convening authority agreed to withdraw Specification 1 of Charge II, to not approve a sentence that included any confinement in excess of five months, and to "waive automatic forfeitures in the amount of five hundred dollars ($500.00), which sum [was] to be paid to the guardian appointed by the Accused to care for his minor dependants [sic]."

After announcement of the sentence, the military judge discussed the terms and conditions of the PTA with the parties:

MJ: Appellate Exhibit IV states that the Convening Authority will not approve any confinement in excess of five months and that he will also waive any automatic forfeitures in the amount of $500—I'm assuming that this is per month—which sum is to be paid to the guardian appointed by the Accused, to care for his minor dependents and that there are no other limitations on the sentence that may be imposed. Airman Sheffield, have I correctly stated the sentence agreement that you had with the Convening Authority, specifically with regard to the sum of forfeitures, that are going to be waived?

ACC: Yes, Sir.

MJ: And that is—what is your understanding with regard to the amount that's going to be waived? I know—I understand it's $500 but was that $500 per month?

ACC: Yes, Sir.

MJ: For up to six months is my understanding. Trial counsel, what's your position?

[Trial Counsel] TC: Yes, Sir. That is the government's understanding of the agreement that it was intended to be a waiver of the forfeiture of $500 per month not to exceed the six months under the regulations on this issue.

MJ: So, in essence, that would apply for the four months of confinement?

TC: That's correct.

MJ: Captain Richard, is that also your understanding?

[Defense Counsel] DC: Yes, Your Honor.

MJ: My understanding of the effect of the Pretrial Agreement on the sentence is that the Convening Authority may approve the sentence as adjudged. Do counsel agree with my interpretation?

TC: Yes, Your Honor.

DC: Yes, Your Honor.

MJ: Airman Sheffield, is that also your understanding?

ACC: Yes, Sir.

The SJAR mentioned the PTA, but did not advise the convening authority of his obligation to waive the automatic forfeitures of pay. The SJAR stated: "There was a pretrial agreement which provided that, in exchange for the accused pleading guilty to almost all of the specifications and the charges before a military judge alone, the convening authority would not approve a sentence to confinement in excess of five months and would waive automatic forfeitures of $500 for the accused's dependents. Accordingly, the pretrial agreement does not limit your ability to approve the sentence as adjudged." The appellant and his defense counsel submitted matters, but failed to comment on this omission. There was no men-

---

1. The appellant also asserts the SJAR did not mention the appellant's PTA. Clearly, paragraph four of the SJAR specifically mentions the PTA.

Accordingly, this portion of appellant's assignment of errors is without merit.

tion of the waiver of automatic forfeitures requirement in the SJAR addendum. The convening authority took action on 16 May 2003 and did not waive the automatic forfeitures.

### Discussion

The standard of review for determining whether post-trial processing was properly completed is de novo. *United States v. Kho,* 54 M.J. 63 (C.A.A.F.2000).

■■■ Rule for Courts–Martial (R.C.M.) 1106(d)(3)(E) requires the staff judge advocate (SJA) to advise the convening authority of his or her obligations pursuant to a PTA in the SJAR. Clearly, the SJA here failed to do so in that he did not tell the convening authority that he was required to waive the automatic forfeiture of the appellant's pay. Defense counsel received the SJAR, but did not comment on the SJA's failure. Failure of defense counsel to comment on any matter in the SJAR in a timely manner waives a later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *Kho,* 54 M.J. at 65. To prevail under a plain error analysis, the appellant has the burden of persuading the court that: (1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right. *Id.* In the case sub judice, the SJA's failure to adequately advise the convening authority of his obligation to waive forfeiture of the appellant's pay for the benefit of his minor children during his confinement is plain error. The government concedes this point. In light of the plain error, the issue before us now is to fashion an appropriate remedy for the error. The appellant requests that we disapprove the adjudged bad-conduct discharge or, in the alternative, allow him to withdraw his plea. The government argues that specific performance is the appropriate remedy—simply pay the appellant what is owed now.

■■ "It is fundamental to a knowing and intelligent plea that where an accused pleads guilty in reliance on promises made by the Government in a pretrial agreement, the voluntariness of that plea depends on the fulfillment of those promises by the Government." *United States v. Perron,* 58 M.J. 78, 82

(C.A.A.F.2003). *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "If the Government does not fulfill its promise, even through inadvertence, the accused 'is entitled to the benefit of any bargain on which his guilty plea was premised.'" *United States v. Smith,* 56 M.J. 271, 272 (C.A.A.F.2002) (quoting *United States v. Bedania,* 12 M.J. 373, 375 (C.M.A.1982)). Where there is a mutual misunderstanding regarding a material term of a PTA that results in the accused not receiving the benefit of his bargain, his pleas are improvident. *Perron,* 58 M.J. at 82. Accordingly, remedial action "in the form of specific performance, withdrawal of the plea, or alternative relief" is therefore required. *Id.*

In *Perron,* the appellant's pretrial agreement required the convening authority to waive automatic forfeitures for the benefit of the appellant's family during his confinement. When the appellant was confined, he was placed in a no-pay status because his enlistment term had expired. Consequently, the appellant's family members did not receive the agreed-upon payments during his confinement. Although the appellant brought this matter to the attention of the convening authority, no remedial action was taken. The appellant then sought relief from the Coast Guard Court of Criminal Appeals. The Court of Criminal Appeals attempted to remedy the situation by remanding the case to the convening authority to either set aside the findings of guilty and sentence or determine whether alternative relief was appropriate. On remand, the convening authority approved the bad-conduct discharge and reduction to E–3, which resulted in the appellant receiving payment for the time he spent in confinement. This payment was for the same amount the family would have received had the forfeiture provision been effected. Dissatisfied with this remedy, the appellant appealed, arguing that he would never have entered into a pretrial agreement with the convening authority because payment after confinement did not compensate his family for the value the payments would have had if they had been paid during his incarceration. He asked the Court of Criminal Appeals to allow him to withdraw his plea or disapprove his bad-conduct discharge. Despite the ap-

pellant's insistence that the belated payment was not an appropriate alternative relief, the Court of Criminal Appeals held it could provide alternative relief to the appellant, even if doing so was contrary to his wishes. On appeal, the Court of Appeals for the Armed Forces (CAAF) held that "imposing alternative relief on an unwilling appellant to rectify a mutual misunderstanding of a material term in a pretrial agreement violates the appellant's Fifth Amendment right to due process." *Id.* at 86. Further, CAAF found that a PTA is an "agreement between the convening authority and the accused" and the "appellant cannot dictate the terms of a[PTA] to the convening authority" either on review or at the outset. *Id.* If alternative relief cannot be agreed upon to ensure the appellant received the benefit of the bargain, "the result is to nullify the original pretrial agreement, returning the parties to the status quo ante." *Id.* CAAF reversed the lower court's decision and set aside the findings and sentence.

Although the case sub judice did not involve a mutual misunderstanding of a material term in the PTA, it involved nonperformance by the government of a material term in the PTA. Clearly, the forfeiture provision was a material term in the PTA in that the appellant was very concerned with the welfare of his dependents during his incarceration. *See Perron,* 58 M.J. at 82–83. The government concedes this point. A mutual misunderstanding of a material term or nonperformance by the government yields the same results—the appellant does not receive the benefit of his bargain. Accordingly, the principles in *Perron* are applicable to this set of facts. *Smith,* 56 M.J. at 273.

Because the convening authority failed to waive the forfeiture of pay during the appellant's confinement and his family did not receive the agreed-upon payments, the appellant did not receive the benefit of his bargain. The government argues that specific performance is appropriate in this case because the facts are different from the facts in *Perron.* In *Perron,* the parties misunderstood that the appellant was eligible to have forfeitures waived, when in fact he was not eligible because there were no forfeitures to waive. Therefore, specific performance was not a viable remedy. Unlike the facts in *Perron,* there is no misunderstanding between the parties in this case, and this appellant *was* eligible to have his forfeitures waived. The government misinterprets *Perron.* Further, the government ignores the timing of payment. The issue is not whether there is money to waive; the issue is whether waiving the forfeitures after confinement grants the appellant the benefit of his bargain. We hold that it does not. Furthermore, we will not grant the appellant's request to set aside the bad-conduct discharge because the government does not agree to this alternative relief. *See Perron,* 58 M.J. at 86. The appropriate remedy for this appellant "is to nullify the original pretrial agreement, returning the parties to the status quo ante." *Id.*

### Conclusion

Accordingly, the findings and sentence are set aside. Having set aside the findings and the sentence, we need not reach the remaining issue. The record of trial is returned to the Judge Advocate General. A rehearing is authorized.