# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist HECTOR L. RODRIGUEZCORTES**
**United States Army**

ARMY 20170521

Seventh Army Training Command
Joseph Keeler, Military Judge
Lieutenant Colonel Edward B. Martin, Acting Staff Judge Advocate

For Appellant: Major Todd W. Simpson, JA; Captain Joseph C. Borland, JA.

For Appellee: Colonel Steven P. Haight, JA; Major Virginia Tinsley, JA (on brief
on specified issues).

23 January 2019

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

This is the third time where we consider what happens when a convening
authority sets aside part of the sentence in violation of Article 60, Uniform Code of
Military Justice, 10 U.S.C. § 860 (2012 & Supp. I 2014). *See In Re Vance*, 78 M.J.
631 (Army Ct. Crim. App. 2018); *United States v. Alvin*, ARMY 20150353, 2017
CCA LEXIS 722 (Army Ct. Crim. App. 21 Nov. 2017). Here, the convening
authority disapproved the adjudged punitive discharge. We consider this issue
closely because the convening authority's action in this case would purport to
deprive this court of jurisdiction to conduct a mandatory review under Article 66(c),
UCMJ.

This issue is not trivial. As we explain below, the government concedes that
the accused's guilty pleas were made unknowingly and were therefore not provident.
While the convening authority disapproved the punitive discharge in this case, the

findings (as well as other parts of the sentence) were approved. We cannot address whether the pleas were improvident unless we have jurisdiction over the case.

And we do not have jurisdiction over this case if the convening authority purports to disapprove the punitive discharge.

We specified two issues for briefing.[1] First, we asked whether the convening authority's action setting aside the punitive discharge was lawful. Second, if the action was not lawful, we asked whether this court should issue of a writ of mandamus directing a new action by the convening authority in compliance with Article 60, UCMJ.

While we conclude the convening authority contravened the limitations in Article 60, UCMJ, we determine a writ is unnecessary in this case and therefore we decline to correct the illegal action.

## DISCUSSION

### A. *The pretrial agreement and its breach.*

Specialist Hector Rodriguezcortes pleaded guilty to two specifications related to stealing military allowances.[2] Each offense had a maximum punishment that included five years confinement. The military judge sentenced the accused to a bad-conduct discharge, confinement for five months, and a reduction to the grade of E-1.

---

[1] The record of trial was received by the Clerk of Court in his capacity as the record custodian and was forwarded to the Court on behalf of the Judge Advocate General for consideration of whether the convening authority's action was lawful. We required a response to our specified issues by the Government Appellate Division. Our requirement for a government response triggered the counsel provisions in Article 70(c)(2), UCMJ. Although we specified two issues, our order specifically made any response by Specialist Rodriguezcortes optional, and we received no substantive submissions from Specialist Rodriguezcortes.

[2] Specialist Rodriguezcortes pleaded guilty to a violation of Article 107, UCMJ, for falsely claiming that three dependents lived in Brooklyn, NY, and a violation of Article 121, UCMJ, for stealing military property of a value greater than $500. He stipulated to stealing about $26,000 and agreed that he had also received approximately $20,000 in other unauthorized allowances.

The plea agreement signed by the parties required the convening authority to defer and waive the automatic forfeitures required by Article 58b, UCMJ.[3] However, this term of the agreement was placed in the quantum portion of the agreement. *See* Rule for Courts-Martial [R.C.M.] 705(d)(2). And, as the military judge did not look at the quantum portion of the agreement prior to the announcement of sentence, the military judge did not discuss the term with the accused.

After trial, in compliance with the agreement, the convening authority approved Specialist Rodriguezcortes's request to defer and waive automatic forfeitures. However, upon submitting the waiver and deferral to finance, Specialist Rodriguezcortes was told he was not entitled to pay because he had been extended on active duty to face court-martial. This raises the question of whether Specialist Rodriguezcortes knowingly entered into a pretrial agreement when it appears he bargained for an ineffectual term.

The government concedes to us that the accused was induced to sign the agreement based on an understanding that the accused's dependents would be entitled to receive pay while he was confined. *See United States v. Perron*, 58 M.J. 78, 82 (C.A.A.F. 2003) (citations omitted). As the term was "material," the government further agrees that Specialist Rodriguezcortes's plea was not made knowingly. *Id.*

We accept the government's concession.[4] There is no prohibition on the government negotiating a guilty plea for an accused who steals tens of thousands of dollars in authorized allowances while simultaneously promising that the

---

[3] The agreement also required the convening authority to defer any adjudged forfeitures. However, no forfeitures were adjudged.

[4] While we accept the concession, we note a few issues from the record. First, the military judge specifically informed Specialist Rodriguezcortes that all pay and allowances would stop on his ETS date. Specialist Rodriguezcortes personally told the military judge that he understood this limitation. Second, the accused's Enlisted Record Brief (ERB) was admitted into the record and listed an ETS date shortly after Specialist Rodriguezcortes's court-martial and well before the completion of the sentence. And, finally, Specialist Rodriguezcortes stipulated that he lied in order to receive unauthorized allowances and he had continued to receive unauthorized allowances through the date that the stipulation was signed, totaling over $46,000. The record is silent as to whether a collection action would have effected Specialist Rodriguezcortes's entitlement to pay and allowances.

government will provide the accused pay and allowances while he serves his confinement. If that is the deal the government strikes, and the government concludes that they cannot comply with a material provision of the deal, an accused is entitled to a remedy.

## *B. The remedy.*

After identifying that the accused would not receive pay and allowances while confined, Specialist Rodriguezcortes's trial defense counsel proposed that the convening authority approve an adverse administrative discharge in lieu of the bad-conduct discharge under the provisions of Army Reg. 635-200, Personnel Separations: Active Duty Enlisted Administrative Separations, [AR 635-200], ch. 10 (19 Dec. 2016). Concurrent with the advice of his Staff Judge Advocate, the convening authority agreed, and approved a sentence to 116 days of confinement and reduction to the grade of E-1. The convening authority did not approve the bad-conduct discharge.

## *C. The limitations of Article 60, UCMJ.*

Under recent amendments to Article 60, UCMJ, the convening authority may not disapprove a punitive discharge in any case in which all the guilty findings arise from conduct occurring after 24 June 2014. *See* Rule for Court-Martial 1107; Executive Order 13,696, 80 Fed. Reg. 35,810 (June 22, 2015). Specialist Rodriguezcortes pleaded guilty to conduct occurring between 24 January 2015 and 9 June 2016. While there are two exceptions that would allow the convening authority to disapprove a bad-conduct discharge at action, neither is applicable here.[5]

We conclude that the convening authority was not authorized to disapprove the bad-conduct discharge in this case. Rule for Courts-Martial 1107(d)(1)(B) implements Article 60, UCMJ, and states that "the convening authority may not disapprove, commute, or suspend, in whole or in part, that portion of an adjudged sentence that includes . . . [a] bad conduct discharge." Nonetheless, the government makes several arguments as to why the convening authority's action was lawful.

---

[5] A convening authority may, in some cases, disapprove a punitive discharge in accordance with the terms of a pretrial agreement. *See* R.C.M. 1107(d)(1)(C)(ii). While there was a pretrial agreement in this case, it did not provide for the convening authority's action here. The other exception allows a convening authority to take favorable action on the sentence upon recommendation of the trial counsel in a case where an accused has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. *See* R.C.M. 1107(d)(1)(C)(i).

First, the government cites several cases from our superior court that allow the convening authority to remedy the breach of a pretrial agreement in a manner similar to this case. *See Perron*, 58 M.J. at 82; *United States v. Smith*, 56 M.J. 271, 279 (C.A.A.F. 2002); *United States v. Parker*, 62 M.J. 459, 461 (C.A.A.F. 2006); *United States v. Pilkington*, 51 M.J. 415, 416 (C.A.A.F. 1999). However, each of these cases was predicated on the convening authority possessing nearly unfettered clemency authority when taking action on a case. We find unpersuasive cases that condone the use of Article 60, UCMJ, authority when that same authority no longer exists by statute.

Second, and relatedly, the government argues that the accused and convening authority are allowed to renegotiate the terms of the pretrial agreement post-trial. Under Article 60, UCMJ, the convening authority may disapprove a punitive discharge pursuant to a pretrial agreement for certain offenses. But we do not read the exception for "pretrial" agreements in Article 60, UCMJ, to allow for *post*-trial agreements. Taken to the next logical step, such reasoning would allow Congress' limitations on a convening authority's post-trial power to cease to exist upon the agreement of the accused and convening authority. And it seems likely that every accused would sign an agreement giving the convening authority the power to reduce the sentence.

Third, the government argues that the convening authority's disapproval of the bad-conduct discharge (and approval of the administrative discharge) was consistent with Army regulations. *See* AR 635-200, para. 10-1(c). However, an Army Regulation cannot confer power on a convening authority that Congress has specifically withdrawn by statute. *See, e.g. United States v. Bartlett*, 66 M.J. 426, 429 (C.A.A.F. 2008) (On issue of panel member eligibility limited by Army regulation, the Court stated "the Army regulation must yield to the clear language of Article 25, UCMJ").

Congress limited the convening authority's traditional ability to grant clemency and to correct legal error.[6] Arguably, this may sometimes place convening authorities in a difficult situation. However, the inability to directly correct legal error does not mean that a convening authority is required to "approve" the findings and sentence of a court-martial when the case is riddled with error. There is neither justice nor judicial economy in knowingly forwarding for appellate review a case that is fatally flawed.

---

[6] The convening authority may, of course, correct legal error (or grant clemency) consistent with the remaining powers in Article 60, UCMJ. Here, for example, the convening authority had the power to set aside the entire five months of confinement and the reduction in enlisted grade. R.C.M. 1107(d)(1)(A), (B).

Rather, as commentators have noted,[7] the convening authority can seek to correct legal error by sending the legal issue to a post-trial Article 39(a), UCMJ, session. *See* R.C.M. 1102(d). That is, the convening authority can seek to correct error through the military judge.

In this case, had the convening authority ordered a post-trial 39(a) session, given that the government itself concludes the accused's plea was improvident, a military judge presiding over a post-trial Article 39(a), UCMJ, session would have been required to at least allow Specialist Rodriguezcortes's to withdraw his guilty plea. *See*, *e.g.*, *Perron*, 58 M.J. at 82 (citations omitted).

*D. A writ is unnecessary.*

Having concluded that the convening authority's action in in this case unlawfully deprived this court of our jurisdiction to review the case, we must determine whether we should issue a writ of mandamus directing a new action in compliance with Article 60, UCMJ.

For this court to issue a writ "requires two determinations: (1) whether the requested writ is 'in aid of' the court's existing jurisdiction; and (2) whether the requested writ is 'necessary or appropriate.'" *LRM v. Kastenberg*, 72 M.J. 364, 367-68 (C.A.A.F. 2013) (citation omitted). While we conclude the issuance of a writ would be in aid of our jurisdiction, it is neither necessary nor appropriate in this case for several reasons.

First and foremost, neither party is requesting relief. The current status of this case is that the findings and part of the sentence were approved by the convening authority, and an administrative discharge was substituted for the punitive discharge. The current status of the case is exactly what *both* Specialist Rodriguezcortes and the United States sought.

Second, were we to upend the status quo and issue a writ mandating a new action, the court-martial would require additional corrective action before the findings could be correct in law. This remains a case where the government concedes it materially breached its pretrial agreement with the accused, and the accused's pleas are therefore improvident. Whether the corrective action is found in a post-trial Article 39(a), UCMJ, session ordered by the convening authority, or a

---

[7] *See* Zachary D. Spilman, *The Army CCA orders a convening authority to approve the findings and sentence of a general court-martial*, CAAFlog, (8 November 2018), http://www.caaflog.com/2018/11/08/the-army-cca-orders-a-convening-authority-to-approve-the-findings-and-sentence-of-a-general-court-martial/#more-39848.

*DuBay*[8] hearing or rehearing ordered by this court, the findings in their current form could not be approved by this court. Assuming we ordered a rehearing or a military judge allowed the accused to withdraw his plea, then the parties would be free to negotiate a result that is identical to the current posture of the case. While such additional process would be procedurally correct, we cannot say the writ is "necessary" when neither party seeks relief and the issuance of the writ would not change the end result.

## CONCLUSION

Accordingly, we reach a different result than we did in *Vance*. Having determined that issuance of a writ is neither necessary nor appropriate, there is nothing left for this court to decide.

The record of trial is returned to the Judge Advocate General and the Clerk of Court for any appropriate action other than review under Article 66(c), UCMJ.

Judge SALUSSOLIA and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[8] *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).