# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM S32603

———————————

### UNITED STATES
*Appellee*

v.

### Christopher P. FINCO
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 July 2020

———————————

*Military Judge:* Christopher M. Schumann.

*Sentence*: Sentence adjudged on 7 June 2019 by SpCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 26 June 2019: Bad-conduct discharge, confinement for 5 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Stuart J. Anderson, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Senior Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

LEWIS, Senior Judge:

Appellant was convicted, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of signing a false official document, one specification of making a false official statement, one specification of wrongful use of marijuana, and one specification of wrongful possession of marijuana, in violation of Articles 107 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 912a.[1,2]

A military judge sitting alone sentenced Appellant to a bad-conduct discharge, confinement for five months, reduction to the grade of E-1, and a reprimand. The adjudged confinement was the same amount as the PTA's confinement cap. The military judge signed the Statement of Trial Results (STR) the same day that court adjourned.[3] After reviewing Appellant's clemency matters, the convening authority signed a decision memorandum which stated, "I take no action on the sentence of this case." Following this statement, the decision memorandum included a reprimand of Appellant by the convening authority.[4] *See* Rule for Courts-Martial (R.C.M.) 1003(b)(1).

---

[1] Unless otherwise noted, references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[2] Per the PTA, the convening authority withdrew and dismissed, with prejudice, one specification of wrongful distribution of marijuana, an alleged violation of Article 112a, UCMJ.

[3] The STR was inserted into the record of trial in accordance with R.C.M. 1101(a). This rule lists a number of required contents, including *inter alia* "the command by which [the court-martial] was convened." R.C.M. 1101(a)(3). The STR in this case included most of the required contents, and it indicated the squadron and major command to which Appellant was assigned, but it omitted the command which convened the court-martial. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.). We permit correction of the STR in our decretal paragraph.

[4] The text of the reprimand was

> You are hereby reprimanded! Using and possessing drugs while representing the Air Force is inexcusable and disgraceful. Integrity first is an Air Force standard and a moral standard you have failed to live by when you made a false official statement and signed a document in which you made another false official statement. Your behavior has no place in the military.

The same day the convening authority signed his decision memorandum, the military judge signed the entry of judgment (EoJ).[5] *See* R.C.M. 1111(b). The signed EoJ contains the following information on the sentence: "Punitive Discharge: Bad Conduct Discharge;" "Total Confinement: 5 months;" "Reduction in Pay Grade: E-1;" and "Reprimand: Yes." The EoJ does not include the language of the reprimand from the convening authority's decision memorandum, but the decision memorandum is included as Attachment 2 to the EoJ.

Appellant raises two assignments of error on appeal: (1) whether the military judge's failure to include the text of the reprimand in the EoJ requires disapproval of a portion of the sentence; and (2) whether his sentence to a bad-conduct discharge is an inappropriately severe sentence.[6] Additionally, we consider whether the convening authority's decision memorandum contains error when the convening authority purported to take no action on the sentence and Appellant was convicted of an offense committed prior to 1 January 2019.

We find the convening authority's decision memorandum contains error and that remand to the Chief Trial Judge, Air Force Trial Judiciary, is appropriate.[7] Given our remand, we do not reach Appellant's second assignment of error, sentence severity.

## I. BACKGROUND

Appellant purchased marijuana and marijuana edible products more than 50 times from a local Las Vegas dispensary over an eight-month period of time

---

[5] The EoJ is incorrectly dated 7 June 2019. The military judge's electronic signature shows he entered judgment on 26 June 2019.

[6] Appellant personally asserts the second issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[7] We also considered whether the original record of trial required a certificate of correction under R.C.M. 1112(d)(2) to correct potential defects. These potential defects include (1) a character statement of Master Sergeant CM which is contained in the defense exhibits even though it was not offered or admitted into evidence; (2) no defense exhibits were properly marked; (3) one appellate exhibit is not properly marked; and (4) the court reporter's index of exhibits does not list all the appellate exhibits. We are satisfied the record of trial is complete under Article 54, UCMJ, 10 U.S.C. § 854, and R.C.M. 1112(b). Although defects may be ordered corrected, this process is not mandatory as a "superior competent authority *may* return a record of trial to the military judge for correction under this rule." *See* R.C.M. 1112(d)(2) (emphasis added). We decline to order a certificate of correction.

which began on 1 November 2017. His total purchases exceeded $2,500.00. Appellant smoked most of the marijuana and consumed most of the edibles that he purchased from this dispensary.

In July 2018, Appellant's good friend, Airman First Class (A1C) JJ, was interviewed by agents from the Air Force Office of Special Investigations (AFOSI) and confessed to smoking marijuana with Appellant. A1C JJ told the AFOSI agents that he and Appellant both obtained the marijuana from this particular dispensary. Later A1C JJ told Appellant that AFOSI may want to speak to Appellant. Upon learning this information, Appellant disposed of his marijuana pipe and the marijuana he still had in his possession. Appellant's hiatus from marijuana lasted only a few weeks. By 8 August 2018, Appellant found a new dispensary, made online purchases of several marijuana products, and resumed smoking marijuana.

On 14 August 2018, two AFOSI agents interviewed Appellant. Appellant waived his right to counsel and his right to remain silent, and agreed to answer the agents' questions.[8] During the interview, Appellant made several oral false statements. He denied smoking marijuana, a statement he knew was false when he made it. He also denied using marijuana with A1C JJ, another statement that he knew was false at the time he made it.

After his face-to-face interview with the agents, Appellant agreed to make a written statement. He wrote: "I have purchased for others but have not smoked." This statement was false because Appellant had actually used marijuana "more than a few dozen times." After taking an oath, Appellant signed his written statement, which contained the above false statement.

AFOSI agents conducted searches of Appellant's cellphone, vehicle, and residence. In those searches, the AFOSI agents found pre-rolled marijuana cigarettes, marijuana paraphernalia, and marijuana dispensary receipts. Appellant provided a urine sample which tested positive for tetrahydrocannabinol (THC), the metabolite of marijuana, at a level of 60 nanograms per milliliter (ng/mL), above the Department of Defense cutoff level of 15 ng/mL.

## II. DISCUSSION

There are two post-trial issues to address. We take them up in this order: (1) the convening authority decision memorandum which purported to take no action on the sentence; and (2) the EoJ's missing reprimand language.

---

[8] At trial, Appellant explained to the military judge that he "originally requested" counsel, but then "waived it." The military judge confirmed with Appellant that he "ultimately waived" his right to have a lawyer present and agreed to answer questions.

**A. Additional Background**

**1. Convening Authority Decision Memorandum**

On 30 April 2020, we ordered the Government to show cause as to why the record of trial should not be returned to The Judge Advocate General for remand to the convening authority to take action on the sentence and for a military judge to modify the EoJ consistent with the purposes of the remand.

The Government submitted a timely response on 30 May 2020 and argued a remand was not required and urged us to resolve the issue ourselves.[9] The Government emphasized several points: (1) our court has jurisdiction; (2) the convening authority's decision to take "no action" can reasonably be interpreted as the convening authority granting no relief and implicitly approving the remainder of the sentence; and (3) the inclusion of the reprimand language supports the implicit approval of the sentence. The Government acknowledges we may disagree with their implicit approval argument but suggests that we should still modify the EoJ ourselves under R.C.M. 1111(c)(2). If we decline to modify the EoJ ourselves, the Government argues that our remand should go to the military judge and not the convening authority. The Government asserts the military judge may then use the post-trial motion process outlined in R.C.M. 1104(b)(2)(B) and modify the EoJ accordingly.

**2. Missing Reprimand Language**

In his first assignment of error, Appellant argues "[t]he [EoJ] must contain the reprimand adjudged" under R.C.M. 1111(b)(3)(D). He urges us to decline to affirm the reprimand under our Article 66, UCMJ, 10 U.S.C. § 866, authority because the Government "has already had two chances to comply with the rule" because it "drafted a deficient judgment and then failed to check its work." Appellant argues that if we permit correction of the error we "would only encourage inattentiveness in post-trial processing without ensuring any significant interest of justice." In Appellant's view, the reprimand "provides little of the overall rehabilitation, retribution, or deterrence that might have resulted from the sentence adjudged."

The Government's response is that the reprimand is contained in the EoJ because the specific language is "in Attachment 2" to the EoJ, the convening authority's decision memorandum. The Government acknowledges that we may not adopt their position that an attachment to the EoJ is sufficient. As a first alternative, the Government prefers our court to modify the EoJ in the

---

[9] Appellant was not required to submit a response to our show-cause order or to answer the Government's response. Appellate defense counsel did not file any motions with the court for leave to file a response or an answer before we issued our opinion.

performance of our official duties under R.C.M. 1111(c)(2). As a second alternative, the Government argues that we could require modification of the EoJ without additional post-trial processing, like we have done with corrections to errors in court-martial promulgating orders used in cases referred before 1 January 2019.

**B. Law**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a R.C.M. provision are also questions of law that we review de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted); *United States v. Martinelli*, 62 M.J. 52, 56 (C.A.A.F. 2007) (citation omitted).

Executive Order 13,825, § 6(b), mandates the version of Article 60, UCMJ, 10 U.S.C. § 860, "as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence. . . ." *See* 2018 Amendments to the Manual for Courts-Martial, United States, 83 Fed. Reg. 9889, 9890 (1 Mar. 2018). The version of Article 60, UCMJ, in effect on 1 November 2017, stated "[a]ction on the sentence of a court-martial shall be taken by the convening authority." 10 U.S.C. § 860(c)(2)(A) (*Manual for Courts-Martial, United States*, (2016 ed.) (2016 *MCM)).* "Except as provided in paragraph (4) [of Article 60(c), UCMJ], the convening authority or another person authorized to act under this section may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*). "Except as provided in subparagraph (B) or (C) [of Article 60(c)(4)], the convening authority or another person authorized to act under this section may not disapprove, commute, or suspend in whole or in part, an adjudged sentence of . . . [a] bad conduct discharge." 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*).

R.C.M. 1104(b)(2)(B) states:

> A motion to correct an error in the action of the convening authority shall be filed within five days after the party receives the convening authority's action. If any post-trial action by the convening authority is incomplete, irregular, or contains error, the military judge shall—(i) return the action to the convening authority for correction; or (ii) with the agreement of the parties, correct the action of the convening authority in the entry of judgment.

A reprimand is an authorized punishment in a court-martial under R.C.M. 1003(b)(1). "A court-martial shall not specify the terms or wording of a reprimand." R.C.M. 1003(b)(1). "A reprimand, if approved, shall be issued, in writing, by the convening authority." *Id.*

"Under regulations prescribed by the Secretary concerned, the military judge of a general or special court-martial shall enter into the record of trial the judgment of the court." R.C.M. 1111(a)(1). "The judgment reflects the result of the court-martial, as modified by any post-trial actions, rulings, or orders. The entry of judgment terminates the trial proceedings and initiates the appellate process." R.C.M. 1111(a)(2). "If the sentence included a reprimand, the judgment *shall contain the reprimand issued* by the convening authority." R.C.M. 1111(b)(3)(D) (emphasis added).

"If the Court of Criminal Appeals determines that additional proceedings are warranted, the Court may order a hearing as may be necessary to address a substantial issue, subject to such limitations as the Court may direct and under such regulations as the [P]resident may prescribe." Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3). "A Court of Criminal Appeals may order a remand for additional fact finding, or for other reasons, in order to address a substantial issue on appeal." R.C.M. 810(f). "A remand under this subsection is generally not appropriate to determine facts or investigate matters which could, through a party's exercise of reasonable diligence, have been investigated or considered at trial." *Id.* "Such orders shall be directed to the Chief Trial Judge." *Id.*

"The Judge Advocate General, the Court of Criminal Appeals, and the [United States] Court of Appeals for the Armed Forces may modify a judgment in the performance of their duties and responsibilities." R.C.M. 1111(c)(2). "If a case is remanded to a military judge, the military judge may modify the judgment consistent with the purposes of the remand." R.C.M. 1111(c)(3).

**C. Analysis**

**1. Convening Authority Decision Memorandum**

We briefly address our jurisdiction as the Government analyzed it in their response to our show-cause order. We are a court of limited jurisdiction defined wholly by statute. *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015). In this case, we derive our jurisdiction from Article 66(b)(3), UCMJ, which says "[a] Court of Criminal Appeals shall have jurisdiction over a court-martial in which the judgment entered into the record under [Article 60c, UCMJ, 10 U.S.C. § 860c] of this title includes a sentence of . . . [a] bad-conduct discharge." 10 U.S.C. § 866(b)(3). In this case, the EoJ accurately lists a bad-conduct discharge so we are satisfied that we have jurisdiction even if the convening authority failed to take action on the sentence as required by law. The convening

authority's decision memorandum does not show any attempt to disapprove the bad-conduct discharge.[10] Even if the convening authority wanted to take such an action on the sentence—and we have no evidence that he did—he lacked that power under the version of Article 60, UCMJ, in effect on 1 November 2017. 10 U.S.C. § 860 (2016 *MCM*). We are satisfied that we have jurisdiction under Article 66(b)(3), UCMJ.

In a case referred after 1 January 2019 where an accused is found guilty of a specification for an offense occurring before 1 January 2019, we find the convening authority cannot simultaneously "take no action on the sentence" and satisfy Exec. Order 13,825, § 6(b)(1), which "requires action by the convening authority on the sentence." We decline the Government's invitation to find the convening authority intended to implicitly approve the entire sentence adjudged. Instead, we need look no further than the plain language of the decision memorandum and determine that the convening authority erred when he purported to take no action on the sentence when Exec. Order 13,825, § 6(b)(1), required him to do so.

We also disagree with the Government that this court should exercise its authority to modify the EoJ. The Government relies heavily on our sister-service court's decision in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020), which involved a similar issue to the one before us. In *Coffman*, the convening authority indicated "N/A" on the section of the "convening authority action form" for "action on the findings and/or sentence." *Id.* at 821. As the earliest offense conviction date in *Coffman* was 2 September 2018, and his case was referred to trial on 26 April 2019, the court found the convening authority "erred in his noncompliance" with the earlier version of Article 60, UCMJ, in effect on 2 September 2018 that required action on the sentence. *Id.* at 822. We agree with this portion of the decision and its rationale that "indicating 'N/A' or stating 'No Action' does not constitute taking action in a case." *Id.* at 823. We also agree with the portion of the decision and its rationale which rejected a challenge to the Army Court of Criminal Appeals' Article 66(b)(3) jurisdiction. *Id.* at 822–23. We choose a different path than our sister-service court for resolving the convening authority's error.[11]

---

[10] The convening authority directed Appellant to take leave pending completion of appellate review under Article 76a, UCMJ, 10 U.S.C. § 876a. This direction is consistent with Appellant having an unsuspended bad-conduct discharge.

[11] Our sister-service court found the convening authority's error was harmless and did not materially prejudice "appellant's substantial right to seek clemency." *Coffman*,

*(Footnote continues on next page)*

In the case before us, Appellant submitted clemency matters which requested his confinement term be further reduced. The convening authority was under no obligation to do this under the PTA's terms. We acknowledge the convening authority's decision memorandum made clear the clemency matters were considered. This provides some support for the Government's position on implicit approval of this portion of the sentence. On the other hand, the language used in the decision memorandum indicates no action was taken on the sentence which can easily be read as a decision was never made. Therefore, we continue our analysis.

The convening authority's decision memorandum stated that he consulted with his staff judge advocate (SJA). We do not know anything about this consultation or whether the SJA gave legal advice during it. It is possible the SJA gave accurate advice to the convening authority that he had to take action on the sentence given the date of the earliest offense and the date of referral. We find it more probable that if the SJA gave advice it would have been consistent with the convening authority decision memorandum—that the law did not require the convening authority to take action on the sentence anymore—which would reflect a clearly erroneous view of the law applicable to Appellant's case. As Appellant had an opportunity to address this error with the military judge after the convening authority signed the decision memorandum, we must determine if Appellant waived or forfeited this issue.

Appellant did not raise a motion under R.C.M. 1104(b)(2)(B) and its five-day prescribed timeframe alleging the convening authority's action was incomplete, irregular, or contained error. Under the prior version of Article 66, UCMJ, we had the discretion to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. 10 U.S.C. § 860 (2016 *MCM*); s*ee United States v. Lee*, No. ACM 39531, 2020 CCA LEXIS 61, at *17 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.) (citations omitted). We find that our discretion on this matter has not changed despite congressional modifications to the version of Article 66, UCMJ, which applies to this case. Exercising that discretion, we find that Appellant's failure to file a motion under R.C.M. 1104(b)(2)(B) forfeited his right to object to the accuracy of the convening authority's decision memorandum absent plain error.

To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially

---

79 M.J. at 823. They took corrective action to ensure compliance with a PTA term that required a reduction in the confinement term. *Id*. In determining harmlessness, the court noted *inter alia* that the appellant waived clemency and the convening authority received proper legal advice related to his ability to provide clemency. *Id*.

prejudiced a substantial right." *See United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). We find the decision to take no action on the sentence was a plain or obvious error. We find the threshold of "some colorable showing of possible prejudice" is still the appropriate standard for an error impacting an appellant's request for clemency. *See id.* (quoting *Scalo*, 60 M.J. at 437). While Appellant has not made a specific claim of prejudice, we find the low standard of some colorable showing of possible prejudice to be apparent. Part of the reasoning behind the low threshold is to "avoid undue speculation as to how certain information might impact the convening authority's broad discretion." *Scalo*, 60 M.J. at 437. Certainly, the convening authority in this case had less discretion than was present in *Scalo* because this convening authority could not disapprove, commute, or suspend the bad-conduct discharge; however, he retained the power to take those actions with the remainder of the sentence. If the convening authority failed to take action on the entire sentence—as his memorandum indicates he did—then we are unsure whether he made a decision on Appellant's clemency request which was within the convening authority's power to grant. Under these circumstances, we find a colorable showing of possible prejudice and that a remand is the best method to remedy this error.

We agree with the Government that the remand should be to a military judge, rather than to the convening authority. It is clear to us that R.C.M. 1104(b)(2)(B) envisioned the military judge overseeing the process of incomplete, irregular, or erroneous post-trial actions by the convening authority when discovered immediately after trial. We see no reason why that procedure could not be used as a framework by a military judge during a remand. We find a remand in this case to be necessary before we can determine whether the sentence is correct in law and should be approved.

**2. Missing Reprimand Language**

We disagree with the Government's first assertion that the EoJ is complete because the convening authority's decision memorandum was attached to the EoJ. The plain language of R.C.M. 1111(b)(3)(D) states that the "judgment shall contain the reprimand issued by the convening authority." In this case, the word "Yes" is what is contained on the EoJ. This one word does not appear in the reprimand contained in the convening authority's decision memorandum and so we find the EoJ requires modification to address the missing reprimand language.

We certainly understand the Government's second point that R.C.M. 1112(c)(2)'s plain language permits us to modify an EoJ in the performance of our duties and responsibilities. We will not attempt to predict all the future

circumstances where we might exercise our discretionary authority to modify an EoJ. For now, we only decline to exercise that authority in this case.

We also decline the Government's third option that we should complete our review under Article 66, UCMJ, affirm the findings and sentence, and permit correction of the EoJ after the fact. Given our resolution of the error in the convening authority decision memorandum, we find this third option inappropriate.

Finally, turning to Appellant's requested relief—disapproval of the reprimand—we also find this not to be the correct remedy. The military judge adjudged a reprimand even though the trial counsel did not argue for one to be part of the adjudged sentence. We also know the convening authority included a reprimand in his decision memorandum. Under these circumstances, modification of the EoJ by a military judge is more appropriate than disapproval of the reprimand by our court.

**D. Remand**

To address the issue raised by the convening authority's decision memorandum, we use the new statutory remand authority of Article 66(f)(3), UCMJ. The Military Justice Review Group's report recommended this new statutory provision to "expressly provide the authority for the court to remand a case for additional proceedings that may be necessary to address a substantial issue" and "would incorporate current practice (i.e., '*Dubay*'[12] hearings) and could include orders to either a convening authority or Chief Trial Judge for delegation to a military judge." *See* Office of the General Counsel, Dep't of Defense, *Report of the Military Justice Review Group Part I: UCMJ Recommendations*, at 611 (22 Dec. 2015), https://www.jag.navy.mil/documents/NJS/MJRG_Report_PartI_22Dec15.pdf.

The plain language of Article 66(f)(3), UCMJ, permits us to order a hearing as may be necessary to address a substantial issue. We find a substantial issue existed when the convening authority purported to take no action on the sentence when the law required it. R.C.M. 810(f) cautions that a remand should not be used for matters which could have been investigated or considered at trial through a party's exercise of reasonable diligence. In this case, we see no single party failing to exercise reasonable diligence as both parties failed to raise a post-trial motion in this case. We also would have expected the military judge to wait to sign the EoJ until action was taken on the sentence.

We mention one final source that applies to remands, the Joint Rules for Appellate Procedure for Courts of Criminal Appeals (JRAP). The JRAP apply

---

[12] *United States v. Dubay*, 37 C.M.R. 411 (1967).

to cases docketed with our court on or after 1 January 2019, including Appellant's case, and are signed by The Judge Advocate General of the Air Force and his counterparts in the Army, Navy, and Coast Guard. JRAP Rule 29, *Article 66(f) Proceedings*, provides further explanations of our remand procedures. JT. CT. CRIM. APP. R. 29. For example, Rule 29(b) addresses whether our court retains jurisdiction on remand or dismisses the appellate proceeding and returns jurisdiction over the case to the military judge. Rule 29(b)(2) elaborates that one of the circumstances when terminating appellate jurisdiction may be appropriate is when the case requires corrective action by the trial court to the judgment. Rule 29(d)(3) also instructs that when we return jurisdiction of a case to the military judge and dismiss the appellate proceeding, the rules applicable to the conduct of a post-trial Article 39(a), UCMJ, session shall apply. These provisions guide our decretal paragraph as we describe the scope of our remand and the procedures available to the military judge.

### III. CONCLUSION

This case is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as no action was taken on Appellant's adjudged sentence as required by law.

Our remand returns jurisdiction over the case to a detailed military judge and dismisses this appellate proceeding consistent with Rule 29(b)(2) of the Joint Rules for Appellate Procedure for Courts of Criminal Appeals. JT. CT. CRIM. APP. R. 29(b)(2). A detailed military judge may:

(1) Correct the Statement of Trial Results;
(2) Return the record of trial to the convening authority or his successor to take action on the sentence;
(3) Conduct one or more Article 66(f)(3), UCMJ, proceedings using the procedural rules for post-trial Article 39(a), UCMJ, sessions; and/or
(4) Modify the Entry of Judgment.

Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66, UCMJ.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court