# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40203**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Matthew D. SCHAUER**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 March 2023

————————————

*Military Judge:* Colin P. Eichenberger.

*Sentence:* Sentence adjudged on 14 September 2021 by GCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 14 October 2021: Dishonorable discharge, confinement for 48 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Spencer R. Nelson, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Joshua M. Austin, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Judge ANNEXSTAD and Judge GRUEN joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

KEY, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification each of possessing and producing child pornography in violation of Article

134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 48 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence in its entirety.

Appellant raises two issues on appeal, specifically whether: (1) the Government erred by permitting the convening authority to consider matters submitted by the named victim's father;[2] and (2) Appellant's sentence is inappropriately severe.[3] We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and the sentence.

## I. BACKGROUND

### A. Investigation into Appellant's Offenses

In April 2020, agents with the Air Force Office of Special Investigations learned that a Tumblr social networking account connected to Appellant's email address had child pornography posted to it. The pornography had been posted from an Internet protocol address located in a foreign country during the latter half of 2018, while Appellant was deployed there. The Government identified ten images and one video posted to the account which appeared to be child pornography. At his court-martial, Appellant admitted that all 11 files amounted to child pornography and that he had downloaded the files from other Tumblr accounts, saved them on his phone, and then uploaded the files to his own Tumblr account. This conduct formed the basis for Appellant's guilty plea to possession of child pornography.

During the investigation into the above, agents examined a number of Appellant's electronic devices. In doing so, they discovered that Appellant had

---

[1] Reference to Article 134, UCMJ, 10 U.S.C. § 934, with respect to the possession of child pornography specification, is to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] In his assignments of error brief, Appellant describes this issue as:

> Whether the Government erred in its post-trial processing when: 1) before trial, the Government requested that the military judge appoint a specific Article 6b representative for the victim; 2) the military judge granted the request and issued an order appointing the requested Article 6b representative; 3) the Government solicited input for action from a parent that the military judge did not designate as the victim's representative; and 4) over trial defense counsel objection, the convening authority considered said input from the non-designated parent[.]

[3] Appellant personally raises this second issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

exchanged messages for about two weeks in March 2020 with JK via an online messaging platform. For the most part, the messages were not overtly sexually explicit in nature, but rather consisted of a running discussion about JK trying to sneak out of her house so they could "meet up," JK seeking a "sugar daddy," and Appellant "spoiling" JK. Appellant would refer to JK as "princess" and himself as "daddy" in the messages.

JK's profile on the messaging platform indicated that she was 18 years old, but after conversing with Appellant for some time, she revealed that she was "a minor." Specifically, she wrote,

> I'm a minor but it all depends on if you are willing to meet up because I've had sex with plenty of adults before and never told on any of them and I particularly like you and your methods of everything but if you don't want to meet because I'm a minor that's your choice and I won't be angry I'll be a little dissatisfied but I'll be ok[.]

Appellant replied that it was "unfortunate that [she] felt the need to tell [him] that," as he no longer had "plausible deniability." Appellant then told JK he would not meet up with her due to her age, leading JK to say she would cease her contact with him.[4]

Shortly thereafter, Appellant reversed his position, telling JK he would meet up with her if she could prove that she was the person she claimed to be by sending him "something that no cop would be able to fake." JK asked, "Like what," and Appellant responded, "I'm not sure." JK then proposed, "We could do like a picture of me doing something specific." Appellant wrote back, "If you could [send] me a video of you showing your id which shows your age, in the same clip shows you nude and touching yourself..... that's about the best I can think of." In response, JK sent Appellant a short video wherein she displays her school identification card which indicated she was an eighth-grade middle school student. In the same video, JK is seen sitting in front of a mirror with her legs spread and briefly penetrating her vagina with her finger. Appellant replied with a message which read, "I'm not gonna lie princess you may have really screwed the pooch here." The two exchanged a few more messages in which Appellant indicated he was uncomfortable meeting up with JK because of "to[o] many things gone wrong" and "to[o] many red flags," leading to the end of their conversation. Appellant and JK never met in person, but Appellant

---

[4] The record does not indicate Appellant knew JK's actual age at the time of these conversations. Appellant told the military judge, however, that he reviewed the Air Force Office of Special Investigation's report of investigation prior to his court-martial and learned that JK was 14 years old at the time they were sending messages to each other.

was charged with, and convicted of, producing child pornography based upon the video JK sent him.

## B. Victim Participation in Appellant's Court-Martial

Just over a month before Appellant's court-martial, the Government submitted a motion requesting the military judge designate JK's mother, Ms. LK, as JK's representative under Article 6b, UCMJ, 10 U.S.C. § 806b. According to the Government's motion, JK was still "a minor" when the motion was filed. The Government further asserted that JK was "a child who cannot properly understand or assert the rights afforded to them by Article 6b." The following day, 6 August 2021, the military judge granted the Government's request, indicating in his order that trial defense counsel had informed him via email that they did not oppose the appointment.

On 18 August 2021, Appellant signed a plea agreement in which he agreed to, *inter alia*, "waive all motions which may be waived under the Rules for Court[s]-Martial."

At Appellant's court-martial on 14 September 2021, the military judge brought up the Government's Article 6b, UCMJ, motion and said he wanted to confirm that the Defense had no objection to Ms. LK's appointment. Trial defense counsel reiterated they did not. While discussing the plea agreement with Appellant, the military judge asked which motions the Defense would have raised but for the "waive all motions" provision. Trial defense counsel highlighted a motion to suppress the seizure of evidence and motions to compel expert consultants, in the event requests for such consultants were denied. Trial defense counsel did not make any reference to a possible motion related to Article 6b, UCMJ.

Once the Government rested its presentencing case, the military judge asked if there was a crime victim present who would like to be heard. In response, the Government produced what it described as a written "victim impact statement from JK that ha[d] been entered through her Article 6b rep[resentative]." The military judge asked who the statement was from, and trial counsel answered, "[I]t is the statement through the Article 6b rep[resentative] for the named victim, JK, [Ms. LK]." The military judge then asked if the Defense objected to the document, and trial defense counsel replied, "With the redactions in place, no objection." The document, which was marked as a court exhibit, has two lines in the body redacted, as well as portions of the header and signature blocks. In the header, the "from" line includes Ms. LK's first name followed by a redacted field. In the signature block, a signature above Ms. LK's signature has been redacted. Below Ms. LK's signature, there is this text: "[Ms. LK's first name] [redacted field] [Ms. LK's last name], parents."

The document is divided into five sections with the following headings: Victim Impact, Family Impact, Financial Impact, Parents' Point of View, and Summary. In the document, under "Victim Impact," Ms. LK indicated JK "was severely impacted," although the memorandum suggests the primary impact was the result of the law enforcement investigation as opposed to JK's interactions with Appellant. Ms. LK went on to explain that JK was receiving mental health treatment. For the "Family Impact," Ms. LK explained the family as a whole was receiving mental health treatment and that they had installed an alarm system. She identified the cost of the alarm and the mental health treatment as financial impacts. Under "Parents' Point of View," Ms. LK wrote: "This was not a victimless crime. [Appellant] is responsible for all the negative consequences and outcomes that were inflicted upon the victim. He exploited a minor-aged child for criminal and nefarious purposes."

The same day as Appellant's court-martial, the Government provided Mr. NK—JK's father—written notice that he had the opportunity to submit matters to the convening authority (the memorandum is addressed to Mr. NK "on behalf of JK"). The Government subsequently notified Appellant that Ms. LK and Mr. NK had submitted a memorandum and that Appellant had the opportunity to respond to or rebut those matters if he wished. The memorandum from JK's parents is signed by both Ms. LK and Mr. NK and restates the fact JK received mental health care and asserts she was "severely impacted." JK's parents credit Appellant for pleading guilty but found the sentence fair, and state "[t]he opinion of the victim and her family is that the sentence should not be reduced by the [c]onvening [a]uthority."

In a clemency submission filed five days later, trial defense counsel objected to JK's parents' memorandum, arguing that Mr. NK was not a crime victim in this case. Trial defense counsel further objected to statements in the memorandum suggesting that Appellant was convicted of "many counts" of child pornography and that Appellant was forced to plead guilty due to "overwhelming evidence." On this latter point, trial defense counsel asserts Appellant decided to plead guilty "on his own accord."

## II. DISCUSSION

### A. Victim-Impact Matters

On appeal, Appellant argues that Mr. NK was neither a victim nor JK's representative, therefore the convening authority was prohibited from considering the post-trial matters jointly submitted by Ms. LK and Mr. NK. We find Appellant's claim to be without merit.

### 1. Law

We review de novo questions regarding the proper completion of post-trial processing. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted).

Under Article 6b(a)(4)(B), UCMJ, a victim has the right to be reasonably heard at the "sentencing hearing relating to the offense." For purposes of this article, "victim" is defined as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense" under the UCMJ. When a victim is under 18 years of age, "the legal guardians of the victim . . . , family members, or any other person designated as suitable by the military judge, may assume the rights of the victim." Article 6b(c), UCMJ.

During presentencing proceedings, crime victims may make unsworn statements orally, in writing, or both. Rule for Courts-Martial (R.C.M.) 1001(c)(5)(A). This rule defines "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty or the individual's lawful representative or designee appointed by the military judge." R.C.M. 1001(c)(2)(A). The contents of the statement are limited to victim impact and matters in mitigation. R.C.M. 1001(c)(3). "Victim impact" is defined to "include[ ] any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

Before deciding whether or not to take action on the sentence, the convening authority in this case was required to "consider matters timely submitted . . . by the accused and any crime victim." R.C.M. 1109(d)(3)(A). Under R.C.M. 1106A(c)(1), crime victims may submit "any matters that may reasonably tend to inform the convening authority's exercise of discretion" regarding the decision on action. R.C.M. 1106A(b)(2)'s definition of "crime victim" mirrors that found in R.C.M. 1001(c)(2)(A): "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty . . . or the individual's lawful representative or designee appointed by the military judge."

### 2. Analysis

In this case, the military judge designated Ms. LK to serve as JK's designated representative under Article 6b, UCMJ. In so doing, Ms. LK was authorized to exercise JK's rights under that article, to include JK's right to be reasonably heard at Appellant's sentencing hearing. As R.C.M. 1001(c)(2)(A) explains, the "crime victim" is either the victim him- or herself or that victim's designated representative—that is, either JK or Ms. LK could speak at the

sentencing hearing on JK's behalf. According to trial counsel, the memorandum submitted was JK's statement "through" Ms. LK, as JK's designee.[5] This memorandum, which was admitted without objection, largely describes the direct, personal impacts suffered by JK, but also includes impacts to her family as a whole—such as expenses for counseling and an alarm system and the fact the entire family was receiving mental health care.

With respect to the post-trial processing of this case, Appellant contends Mr. NK may not be considered a "victim." This position, however, cannot be squared with the definitions in the UCMJ and the Rules for Courts-Martial. Insofar as Mr. NK and Ms. LK must pay for the mental health care and the alarm system they believe were necessitated by Appellant's conduct, they have suffered a pecuniary harm, either individually or jointly. Moreover, it is hardly difficult to understand the notion that a parent may be psychologically harmed by crimes committed against the minor children in their care—a notion we have previously endorsed. *See, e.g.*, *United States v. Dunlap*, No. ACM 39567, 2020 CCA LEXIS 148, at *25–26 (A.F. Ct. Crim. App. 4 May 2020) (unpub. op.) ("[A] parent responsible for the safety and well-being of children and who witnesses the suffering of those children may be harmed as much as, if not more than, the children themselves.").

Contrary to Appellant's position, we conclude Mr. NK did qualify as a victim for the reasons stated above and was therefore entitled to be heard by the convening authority before the decision on whether to take action was made. For the same reasons, Ms. LK qualified as a victim. Moreover, as JK's designated representative, Ms. LK had the legal authority to speak on behalf of JK, the victim named on the charge sheet in this case. Appellant cites no authority prohibiting Ms. LK from explaining the impact Appellant's offenses had on her personally in addition to the impacts on JK, whom Ms. LK represented, and we are aware of none. Finally, we know of no law, rule, or policy that would prohibit victims from jointly submitting matters to a convening authority instead of submitting individual memoranda, and we see nothing improper with Mr. NK and Ms. LK jointly authoring such a memorandum. Finding no error, we grant no relief.

## B. Sentence Severity

Appellant contends his sentence is inappropriately severe in light of his military service, which included four overseas deployments that he asserts

---

[5] Although the redactions in the memorandum were not discussed in any detail during Appellant's court-martial, it would be reasonable to conclude that the document was originally prepared as a letter from and signed by both Ms. LK and Mr. NK. The redactions in the header and the signature block removed Mr. NK's name and signature.

took a toll on both his marriage and his mental health. Appellant's plea agreement required the military judge to sentence Appellant to confinement for no less than 12 months and no more than 48 months for each specification. The military judge sentenced Appellant to 18 months for the possession specification and 48 months for the production specification, in addition to a dishonorable discharge. In accordance with the plea agreement, the military judge ordered the periods of confinement to run concurrently.

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Appellant's request is one in the nature of clemency, which we are barred from granting. While Appellant's sentence is significant, so was his misconduct. Appellant sought out, downloaded, and re-posted images and a video constituting child pornography. Additionally, Appellant found a young girl online and proposed she send him a video in the nude while touching herself. By virtue of her compliance, Appellant succeeded in enticing JK to produce child pornography and then deliver the same to Appellant. This is a step far beyond simply downloading existing child pornography. Instead, Appellant incrementally expanded the existing universe of that material by causing the creation of the video. We have carefully considered Appellant, his record of service, his personal circumstances, and the entirety of his record of trial, and we conclude Appellant's adjudged sentence is not inappropriately severe.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court