*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Justin M. COLLETTI**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202300104**

_____

Decided: 12 March 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton

Sentence adjudged 4 January 2023 by a special court-martial convened at Marine Corps Recruit Depot Parris Island, South Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, forfeiture of $1,278.00 pay per month for 12 months, and a bad-conduct discharge.

For Appellant:
*Captain Edward V. Hartman, JAGC, USN*

For Appellee:
*Lieutenant Lan T. Nguyen, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Judge MIZER delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

MIZER, Judge:

Appellant was convicted, consistent with his pleas, of one specification of failure to obey a lawful general order, one specification of obstruction of justice, and one specification of wire fraud,[1] in violation of in violation of Articles 92, 131b, and 134, Uniform Code of Military Justice (UCMJ).[2]

Appellant raises two assignments of error: (1) whether Appellant's conviction for wire fraud in violation of 18 U.S.C. § 1343 was legally and factually sufficient; and (2) whether the sentence adjudged is inappropriately severe if the wire fraud charge is dismissed, leaving only the Article 92, UCMJ, and Article 131b, UCMJ, violations remaining.[3]

One is often cautioned about believing everything one reads on the internet. And this case would suggest that this axiom is especially true with respect to internet dating sites. Appellant, a male staff sergeant, used the dating website OkCupid, among others,[4] to engage in sexually explicit conversations with two adult women, which ultimately resulted in the women exchanging sexually explicit digital images with Appellant.

But Appellant did so while posing as a woman, "Jenicae."[5] He simultaneously also pretended to be Jenicae's florist and lover, "Nikki," who was purportedly interested in having a threesome with the targeted women. This could never happen, of course, because Appellant is neither Jenicae nor Nikki.

———————————

[1] The federal wire fraud statute, 18 U.S.C. § 1343, was assimilated under Article 134, UCMJ.

[2] 10 U.S.C. §§ 892, 931b, 934.

[3] Appellant's second assignment of error was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Pros. Ex. 1 at 2.

[5] R. at 49.

But that wasn't the point. As he would later tell the military judge, the object of Appellant's fraud was obtaining digital nude images.[6] So, to accomplish his catfishing-for-pictures[7] scheme, Appellant used a digital image of an unidentified woman to pose as Nikki.[8] He also used a series of intimate images that his then-actual girlfriend had shared with him—with the expectation that they would remain private—to pose as Jenicae.[9]

While Appellant slept on the Fourth of July 2021, his soon-to-be ex-girlfriend discovered his catfishing efforts on his iPhone 11, and she reported him to his command.[10]

The Government charged Appellant's catfishing scheme under the federal wire fraud statute, and Appellant pleaded guilty to that offense.[11] This appeal followed.

Because we conclude the digital images that were the object of Appellant's fraud implicate neither money nor traditional property interests, we set aside Appellant's plea and conviction for violating the federal wire fraud statute as improvident. The remaining findings are also set aside, and a rehearing is authorized.[12]

# I. BACKGROUND

1) *The Air Force Court of Criminal Appeals adopts the Court of Appeals for the Second Circuit's "right-to-control" theory of criminal liability under the federal wire fraud statute.*

---

[6] R. at 63.

[7] "'Catfishing' refers to the creation of a fake online identity, typically for use on dating websites. Catfishing for profit, as the phrase suggests, describes catfishing in which the fake identity is used to obtain money from a duped victim." *United States v. Jules*, 777 Fed. Appx. 457, 458 (11th Cir. 2019). And such schemes are apparently more common than one might expect. *See, e.g., United States v. Ashmore*, No. ACM 40036, 2022 CCA LEXIS 141 (A.F. Ct. Crim. App. Mar. 8, 2022).

[8] Pros. Ex. 1 at 3.

[9] Pros. Ex. 11 at 1.

[10] *Id.*

[11] 18 U.S.C. § 1343.

[12] We have considered Appellant's second assignment of error. *See United States v. Scott*, No. 24-0063/AR, 2024 CAAF LEXIS 68 (C.A.A.F. Feb. 1, 2024). But, in light of our decision, it is unnecessary to address it.

Although this case began in bucolic Beaufort, South Carolina, the genesis of Appellant's wire fraud conviction rests with the Air Force Court of Criminal Appeals' (AFCCA) decision in *United States v. Martinez.*[13]

*Martinez* involved a similar catfishing scheme where the defendant sought to trick three female airmen into sending him nude digital images by posing as one of the women and telling them that "she" had been paid thousands of dollars to sell nude and sexually suggestive images to a magazine.[14] He promised the targeted airmen that they too would be paid thousands of dollars for similar images.[15] All they had to do was take some pictures and send him their bank account information so that he could pay them. One of the airmen did so.[16]

But, instead of paying his victim for her work as promised, Airman Martinez used the images to blackmail her for additional images and henceforth required her to address him as "daddy."[17] Ultimately, as happened here, the Government charged Airman Martinez with violating the federal wire fraud statute.

The AFCCA began its analysis in *Martinez* by noting that neither party could cite precedent for charging the conduct at issue as wire fraud, and that the case raised an issue of first impression.[18] Given that the wire fraud statute was enacted back in 1952, the absence of *any* precedent should have alerted the AFCCA—and subsequently the Government in *this* case—that it was "proceeding at flank speed…off course in thick fog, with no one on the bridge, helm or engine order telegraph."[19] As recently as last term, the Supreme Court again

---

[13] No. ACM 39973, 2022 CCA LEXIS 212 (A.F. Ct. Crim. App. Apr. 6, 2022) *aff'd on other grounds*, 83 M.J. 439 (C.A.A.F. 2023). The appellant in *Martinez* raised only one issue before the Court of Appeals for the Armed Forces: whether by denying Appellant's motion to instruct the panel that a guilty verdict required unanimity, the military judge violated appellant's Fifth or Sixth Amendment rights. It didn't. *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023).

[14] *Id.* at *7.

[15] *Id.* at *8.

[16] *Id.* at *8.

[17] *Id.* at *8.

[18] *Id.* at *22.

[19] *See generally, United States v. Jones*, 7 M.J. 806, 811 (N.M.C.M.R. 1979).

cautioned lower courts against embracing "novel" interpretations of the federal wire fraud statute.[20]

Nevertheless, the AFCCA began its analysis by correctly holding that the federal wire fraud statute is "limited in scope to the protection of property rights[.]"[21] But are digital images *property* for purposes of that statute? The AFCCA thought so.

After all, the AFCCA reasoned, wire fraud convictions have been affirmed in federal courts for cases involving intangible property.[22] The Court further noted that, "[w]hile the above federal cases involved intangible property of a business," there was "no reason for a different result when the intangible property belongs to an individual[.]"[23]

The Court then adopted the holding of the Second Circuit "that a defining feature of most property is the right to control the asset."[24] And the victim in *Martinez* "suffered a loss of control of her private nude photos."[25] The *Martinez* Court concluded that the victim's "property right to control her nude, private photos," was "lost when she succumbed to Appellant's scheme to defraud."[26] Accordingly, the AFCCA affirmed Airman Martinez's conviction for wire fraud.

2) *Citing <u>Martinez</u> as authority, the Government charges Appellant with violating the federal wire fraud statute.*

The day before Appellant pleaded guilty, the military judge presciently sent an email asking, among other things, about *Martinez*.[27] "Based upon the charging, I suspect the parties are familiar with" *Martinez*.[28] "If you are not, please ensure you are familiar with it before we begin tomorrow."[29]

---

[20] *See, e.g., Percoco v. United States*, 143 S. Ct. 1130, 1136 (2023).

[21] *Martinez*, 2022 CCA LEXIS 212 at *18 (citing *McNally v. United States*, 483 U.S. 350 (1987)).

[22] *Id.* at *21 (citing *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987)).

[23] *Id.* at *23.

[24] *Id.* (citing *United States v. Percoco*, 13 F.4th 158, 170 (2d Cir. 2021), *rev'd*, 143 S.Ct. 1130 (2023)).

[25] *Id.*

[26] *Id.*

[27] App. Ex. II at 3.

[28] *Id.*

[29] *Id.*

The Government responded that it was relying on *Martinez* "primarily for the proposition that the subject images constitute 'property' within the meaning of the wire fraud statute."[30] The Government also acknowledged "that circumstances of the scheme in *Martinez* are significantly more aggravating than" this case.[31]

3) *Appellant pleads guilty to violating the federal wire fraud statute.*

The following day, the military judge referenced the previous day's email exchange saying the parties had discussed *Martinez* before going on the record.[32] Appellant then pleaded guilty to violating the federal wire fraud statute—three times.[33] In both a stipulation of fact and his colloquy with the military judge, Appellant admitted that the digital images he fraudulently obtained were "personal intangible property"[34] and the "sole property" of the person depicted.[35]

4) *One hundred and twenty-seven days after Appellant pleaded guilty, the Supreme Court overruled the Second Circuit's right-to-control theory of criminal liability under the federal wire fraud statute.*

*Martinez* was barely a year old when the Supreme Court issued its decision in *Ciminelli v. United States.*[36] Louis Ciminelli was indicted under the wire fraud statute for participating in a conspiracy to rig the bidding process to ensure his firm was awarded a $750 million construction project in Buffalo, New York.[37] The Government relied on the Second Circuit's right-to-control theory to show that Mr. Ciminelli had deprived his victim, a non-profit affiliated with the State University of New York, of potentially valuable economic information necessary to make discretionary economic decisions—who should be awarded a $750 million contract. After all, didn't the non-profit have the intangible right to control the use of its $750 million?

---

[30] *Id.* at 2.

[31] *Id.*

[32] R. at 27.

[33] The Defense encountered some difficulty in announcing Appellant's pleas, but succeeded on the third attempt. R. at 16-18.

[34] Pros. Ex. 1 at 2.

[35] R. at 57; Pros. Ex. 1 at 2.

[36] 143 S. Ct. 1121 (2023).

[37] *Id.* at 1125.

The Court's opinion began in the same way as the AFCCA's did in *Martinez*, by noting "lower federal courts for decades interpreted the mail and wire fraud statutes to protect intangible interests unconnected to traditional property rights."[38] But the Court then immediately noted it had spent more than three decades attempting to *halt* "that trend" beginning with its 1987 decision in *McNally v. United States*.[39]

The Second Circuit's right-to-control theory was just the latest § 1343 aberration to arrive at the Court. According to the right-to-control theory, "since a defining feature of most property is the right to control the asset in question, the property interests protected by the wire fraud statute include the interest of a victim in controlling his or her own assets."[40] In *Ciminelli*, the Court overruled this line of precedent and held that the right-to-control theory "cannot be squared with the text of the federal fraud statutes, which are 'limited in scope to the protection of property rights.'"[41]

Much like the AFCCA's decision in *Martinez*, the Court noted that when the Second Circuit "first recognized the right-to-control theory in 1991—decades after the wire fraud statute was enacted and over a century after the mail fraud statute was enacted—it could cite no authority that established 'potentially valuable economic information' as a traditionally recognized property interest."[42] And the Second Circuit had not since attempted to ground the right-to-control theory in traditional property notions.[43]

For its part, upon being haled before the Supreme Court in *Ciminelli*, the Government immediately beat a hasty retreat and abandoned the right-to-control theory. Despite relying on the right-to-control theory for decades, the Government conceded that if "the right to make informed decisions about the disposition of one's assets, without more, were treated as the sort of 'property' giving rise to wire fraud, it would risk expanding the federal fraud statutes beyond property fraud as defined at common law and as Congress would have

---

[38] *Id.* at 1126.

[39] *Id.* at 1127 (citing *McNally*, 483 U.S. at 350).

[40] *Id.* at 1127 (citing *United States v. Lebedev*, 932 F.3d 40, 48 (2d Cir. 2019)) (cleaned up).

[41] *Id.* at 1127 (citing *McNally*, 483 U.S. at 360)).

[42] *Id.* at 1127 (citing *United States v. Wallach*, 935 F.2d 445, 461-64 (2d Cir. 1991)).

[43] *Id.* at 1127-28.

understood it."[44] "Thus, even the Government now agrees that the Second Circuit's right-to-control theory is unmoored from the federal fraud statutes' text."[45]

But the Government makes no such concession here. Despite the repeated references in the record to *Martinez*, and *Martinez's* express reliance on Second Circuit precedent like *Percoco* that has since been reversed, the Government insists Appellant "was not prosecuted under a 'right-to-control' theory."[46] No. Appellant was prosecuted, according to the Government, under an "exclusive use" theory, which the Government maintains is a "traditionally recognized property right."[47] Under this newly-minted, traditional property right, the victims in this case lost "the exclusive use over their intangible property—the sexually explicit depictions of their bodies in digital photographs."[48] Put another way, they lost the right to control the use of their digital images. Needless to say, that is "slicing the baloney mighty thin."[49]

And so, confronted with the intervening, unanimous decision of the Supreme Court in *Ciminelli*, we must decide whether prosecuting Appellant for fraudulently obtaining digital images on internet dating sites expands the wire fraud statute beyond the type of property fraud as defined at common law and as Congress would have understood it when it enacted the wire fraud statute in 1952.

## II. DISCUSSION

### A. Rejection of a guilty plea on appellate review requires that the record of trial show a substantial basis in law and fact for questioning the guilty plea.[50]

As noted by the Government, Appellant incorrectly frames his challenge to his conviction for wire fraud on the basis of legal and factual sufficiency, presumably because that is how the issue now before the Court was raised at the

---

[44] *Id.* at 1128.

[45] *Id.*

[46] Gov't Br. at 23.

[47] Gov't Br. at 21.

[48] Gov't Br. at 21.

[49] *See generally, Sessions v. Dimaya*, 584 U.S. 148, 160 (2018).

[50] *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

AFCCA.[51] But unlike the appellant in *Martinez*, Appellant pleaded guilty[52] to violating the federal wire fraud statute, and so the question before the Court is whether his plea is provident.[53]

We review a military judge's decision to accept a guilty plea for an abuse of discretion.[54] A military judge abuses her discretion if she fails to obtain an adequate factual basis to support the plea—an area in which we afford significant deference.[55] Additionally, any ruling based on an erroneous view of the law also constitutes an abuse of discretion.[56] And changes in the law can also render an appellant's plea improvident on direct appeal.[57] Where a providence inquiry raises pure questions of law, we review the plea *de novo*.[58]

In summary, we review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea *de novo*.[59] In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding appellant's guilty plea.[60]

**B. The military judge abused his discretion by accepting Appellant's guilty plea to violating the federal wire fraud statute.**

"The Government in this case needed to prove *property* fraud."[61] And the parties agree that § 1343 prohibits only deceptive schemes to deprive a victim

---

[51] *Compare* Def. Br. at 2 *with* Gov't Br. at 11.

[52] R. at 16-18.

[53] Pursuant to Rule for Courts-Martial 910(j), an unconditional guilty plea waives any objection aside from whether the prosecution may be constitutionally maintained and whether there is a substantial basis in law or fact for questioning the plea. *United States v. Bradley*, 68 M.J. 279, 282 (C.A.A.F. 2010).

[54] *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996).

[55] *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002).

[56] *United States v. Weeks*, 71 M.J. 44 , 49 (C.A.A.F. 2012); *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[57] *See, e.g., United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003); *United States v. Williams*, No. ARMY 20140691, 2016 CCA LEXIS 171 (A. Ct. Crim. App. Mar. 17, 2016) (unpublished).

[58] *Inabinette*, 66 M.J. at 322.

[59] *Id.*

[60] *Id.*

[61] *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020).

of money or property.[62] Neither party asserts that the digital images exchanged in this case have any monetary value, so this case turns solely on whether there is a substantial basis to question Appellant's plea that digital images are "property" under § 1343. We conclude there is.

In arguing that digital images are property, the Government begins by citing *Carpenter*[63] for the dubious proposition that property can be tangible or intangible.[64] To be fair, the *Carpenter* Court did hold that the Wall Street Journal's confidential business information was intangible property protected by the mail and wire fraud statutes.[65] But the Government omits from its brief,[66] as the late Paul Harvey[67] would say, "the rest of the story."[68]

A year after *Carpenter* was decided, Congress, swiftly reacted to the Court's decision from the previous term in *McNally* and amended the federal fraud statues "specifically to cover one of the 'intangible rights' that lower courts had protected under [the statutes] prior to *McNally*: 'the intangible right of honest services.'"[69]

Aside from the intangible right of honest services, *McNally* "stopped the development of the intangible-rights doctrine in its tracks."[70] Or, as the Court put it in *Ciminelli*, "despite the wide array of intangible rights courts protected

---

[62] *Compare* Def. Br. at 8 *with* Gov't Br. at 14.

[63] 484 U.S. at 25.

[64] Gov't Br. at 15.

[65] *Carpenter*, 484 U.S. at 25.

[66] We do not suggest that this omission was intentional. The AFCCA also apparently thought federal wire fraud jurisprudence was suspended in amber in 1987. *Martinez*, 2022 CCA LEXIS 212 at *21 (citing *Carpenter*, 484 U.S. at 26-27).

[67] "'The Rest of the Story,' a Monday-through-Friday radio program that aired between 1976 and 2009, was hosted by famed commentator Paul Harvey. In each program, Harvey told a story about a little known or forgotten matter, leaving an important and usually surprising nugget of information until the end. As every episode unfolded, Harvey encouraged his audience to stay tuned for 'the rest of the story.'" *People v. Tippet*, 2023 CO 61, 75 n. 1 (Colo. 2023) (Samour, J. dissenting) (internal citations omitted).

[68] *See generally, United States v. Medina*, 430 F.3d 869, 875 (7th Cir. 2005).

[69] *Cleveland v. United States*, 531 U.S. 12, 19-20 (2000).

[70] *Skilling v. United States*, 561 U.S. 358, 401 (2010).

under the fraud statutes pre-*McNally*, [Congress] revived '*only*' the intangible right of honest services."[71]

Now, less than a year after these words were written in *Ciminelli*, what are we to make of the Government's argument that a *second* intangible property right survived Congress' 1988 amendment to the wire fraud statute? Not much. Digital images have existed since 1957,[72] and the Government can't identify even a single case so much as referencing the purported traditional, intangible property right to "exclusive use" of digital images for purposes of the wire fraud statute.

On the other side of the ledger, since *McNally* and *Carpenter* were decided in 1987, the Supreme Court has repeatedly upbraided the Federal Circuit Courts of Appeal for extending intangible property rights beyond honest services in cases like *Ciminelli*.[73] And so in this case the Government now invites this Court to take its turn in the dock by following two decisions—from the Eleventh Circuit—that originated in 1984.[74]

As the Government notes, both cases, *United States v. Diwan*[75] and *United States v. Cross*,[76] involved the same scheme to commit mail fraud[77] where the defendants convinced the parents of child actors to permit them to take nude photographs[78] of their children as part of a purported casting call for a fictional documentary.[79]

---

[71] *Ciminelli*, 143 S. Ct. at 1128 (emphasis in original) (citation omitted).

[72] National Institute of Standards and Technology, *First Digital Image*, https://www.nist.gov/mathematics-statistics/first-digital-image (last visited Feb. 27, 2024).

[73] *See, e.g., Kelly*, 140 S. Ct. at 1568 (rejecting Third Circuit's holding that defendants committed property fraud by realigning toll lanes on the George Washington Bridge through "deception, corruption, and abuse of power."); *Cleveland*, 531 U.S. at 23 (rejecting Fifth Circuit precedent holding that Louisiana video poker licenses were "property" for purposes of the federal wire fraud statute).

[74] Gov't Br. at 18-19.

[75] 864 F.2d 715, 719 (11th Cir. 1989)

[76] 928 F.2d 1030 (11th Cir. 1991).

[77] 18 U.S.C. § 1346.

[78] The negatives were then sent through the mail so that one of the co-conspirators could develop the film at his home, which resulted in an indictment for eighteen counts of mail fraud under 18 U.S.C. § 1341. *Cross*, 928 F.2d at 1035.

[79] *Cross*, 928 F.2d at 1035.

The Eleventh Circuit upheld the challenged convictions for mail fraud because the defendants "schemed to deprive the intended victims of the fraud, the girls, the talent agency, and the photographer of property and money."[80] Or, as the Court put it in *Cross* two years later, the defendants "schemed to defraud the Tampa models, along with their families, the photographer, and the modeling agency, of various services and property of some value."[81]

In contrast, the victims in this case weren't actors expecting payment for an audition or performance. And, again, both parties agree that the digital images at issue in this case are without economic value of any kind.[82] But the Government, nevertheless, argues "there is no need to prove that the photographs had economic value or that the victims were deprived of a value."[83] Yet, even the cases offered by the Government, *Cross* and *Diwan*, say otherwise. And so do we.

Imagine if Appellant had used OkCupid to pretend that he was a lesbian in order to fraudulently induce his victims into sending him pictures of them rebuilding a carburetor. Would we be here discussing wire fraud? We think not. And that suggests that the concern over the nude images in this case rests in *privacy*[84] rather than the requisite traditional *property* interests rooted in the common law.

Or, what if Appellant had merely lied about something more pedestrian such as his age, his weight, or his height—lies that may someday occur online? Could the Government charge that scheme as wire fraud? Yes, says the Government. This is all wire fraud because Appellant would have fraudulently obtained images of his victims' "bodies in digital photographs."[85] And although

---

[80] *Diwan*, 864 F.2d at 719.

[81] *Cross*, 928 F.2d at 1043-44.

[82] *Compare* Def. Br. at 12 *with* Gov't Br. at 21.

[83] Gov't Br. at 21.

[84] Congress has acted to protect the privacy interests at issue in this case. *See* 10 § U.S.C. 117a. While some have argued that the UCMJ's so-called "revenge porn" statute "suffers from serious flaws and requires careful revision," Major Joshua B. Fix, *Feature: No. 1: The Revenge of Preemption: How to Correct Unintended Consequences of the Military's 'Revenge Porn' Statute*, 2021 Army Lawyer 53 (2021), "if the statute needs to be amended, that task should be left to Congress." *Fortis, Inc. v. United States*, 420 F. Supp. 2d 166, 177 (S.D.N.Y. 2004).

[85] Gov't Br. at 21.

Appellant's victims retained the original images, it is wire fraud, says the Government, because they lost the right to control the exclusive use of the images depicting them.[86] Sound familiar?

To be clear, the conduct in this case is despicable and potentially criminal under the UCMJ, but if the wire fraud statute doesn't protect the right to information needed to make discretionary economic decisions, like how to spend $750 million, it certainly doesn't protect the right to information needed to make the discretionary decision to share nude digital images.

Indeed, this case heralds the arrival of the parade of horribles predicted in cases like *Ciminelli* and *Cleveland.* The Government's "exclusive use" theory of criminal liability "makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with our caution that 'absent a clear statement by Congress,' courts should 'not read the mail and wire fraud statues to place under federal superintendence a vast array of conduct traditionally policed by the States."[87]

---

[86] Gov't Br. at 20.

[87] *Ciminelli*, 143 S. Ct. at 1128 (citing *Cleveland*, 531 U.S. at 27) (cleaned up).

### III. CONCLUSION

Judges interpret the law as written, not as they wish it were written.[88] And Congress may yet empower the Government to police internet dating sites to ensure that Marines obtain nude photographs from otherwise consenting adults without resorting to loathsome deception. Congress just hasn't done that in the federal wire fraud statute.

After careful consideration of the record and briefs of appellate counsel, the finding of guilty as to the sole Specification under the Additional Charge, wire fraud, is **SET ASIDE**.[89] The findings of guilt as to Charges I and II are **SET ASIDE**.[90] The sentence is **SET ASIDE**. A rehearing is **AUTHORIZED**.[91]



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[88] *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1824 (2020) (Kavanaugh, J. dissenting).

[89] The remedy for finding a plea improvident is to set aside the finding based on the improvident plea and authorize a rehearing. *United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013) (citation omitted).

[90] While we would normally affirm findings unrelated to an assignment of error raised by an appellant and authorize only a rehearing as to sentence, this case presents a mutual misunderstanding regarding a material term of a plea agreement—that Appellant could plead guilty to violating the federal wire fraud statute under the facts of this case. *See generally, United States v. Lundy*, 60 M.J. 52, 57 (C.A.A.F. 2004). In their sentencing arguments below, both parties agreed that the purported crime of wire fraud was the gravamen of this case. (R. at 159; 163.) Further, Appellant's second assignment of error, raised pursuant to *Grostefon*, alleges that the sentence negotiated between the parties and ultimately adjudged in this case is inappropriately severe if Appellant's conviction for wire fraud is dismissed. While we need not reach that issue, we take it into consideration as we determine whether to rectify a mutual misunderstanding of a material term in a plea agreement by imposing alternative relief on an unwilling appellant in violation of basic due process. *United States v. Perron*, 58 M.J. 78, 86 (C.A.A.F. 2003). Under the facts of this case, we are required to nullify the plea agreement and return the parties to the status quo ante. *Id.*

[91] Articles 59 & 66, UCMJ.